### Francisco MENDOZA, Appellant–Defendant,

v.

### STATE of Indiana, Appellee–Plaintiff.

### No. 49A02–0609–CR–759.

Court of Appeals of Indiana.

July 13, 2007.

---

David Pardo, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Francisco Mendoza appeals his convictions for Attempted Aggravated Battery,[1] a class B felony, Burglary,[2] a class C felony, Theft,[3] a class D felony, Resisting Law Enforcement,[4] a class D felony, Criminal Recklessness,[5] a class D felony, Pointing a Firearm,[6] a class

---

1. Ind.Code § 35–41–5–1, § 35–42–2–1.5.

2. Ind.Code § 35–43–2–1.

3. I.C. § 35–43–4–2.

4. Ind.Code § 35–44–3–3.

5. I.C. § 35–42–2–2.

6. Ind.Code § 35–47–4–3.

D felony, and Carrying a Handgun Without a License,[7] a class A misdemeanor.

In particular, Mendoza contends that the trial court should have granted his motion to dismiss because the State improperly withdrew from a plea bargain, dismissed the charges, and refiled the charging information with a new charge included. He also argues that the evidence is insufficient to support his conviction for attempted aggravated battery. Finally, Mendoza appeals the sentences imposed by the trial court, contending that the trial court considered improper aggravators, improperly rejected proffered mitigators, imposed sentences that are inappropriate in light of the nature of the offenses and his character, and erroneously imposed consecutive, enhanced sentences. Finding no error, we affirm the judgment of the trial court and remand with instructions to amend the abstract of judgment by deleting the reference to an attempted murder conviction and adding an attempted aggravated battery conviction in its place.

*FACTS*

Early on the morning of July 31, 2005, Mendoza burglarized Party Pak Liquors in Indianapolis. Mendoza also stole a loaded revolver that the store's owner kept hidden underneath the counter.

At approximately 5:16 a.m., Marion County Sheriff's Sergeant Jeffery Silcox was dispatched to the liquor store in response to a burglary alarm. Deputy Clint Ellison joined Sergeant Silcox near the front of the store, while Deputy Tom Nolan ultimately took up a position in the parking lot where he could observe a security door and provide cover to Sergeant Silcox and Deputy Ellison. Sergeant Silcox yelled, "Marion County Sheriff's Department," and ordered everyone inside the store to "make yourself known," warning that the officers would consider everyone inside to be armed and dangerous. Tr. p. 17.

After the sergeant made those statements, the officers heard a loud bang, later inferring that Mendoza had fired a test shot from the revolver to ensure that it worked before attempting to exit the store. Sergeant Silcox observed Mendoza moving on his hands and knees toward the store's front door. The sergeant noticed that Mendoza had a revolver in his hand, moved for cover, and notified the deputies that Mendoza had a gun.

Mendoza crawled out of a hole in the store's east door and pointed the revolver at Sergeant Silcox and Deputy Nolan. Deputy Ellison ordered Mendoza to drop the gun and, after Mendoza failed to comply with the order, Deputy Ellison fired three rounds at the west door. Deputy Nolan saw a muzzle flash from Mendoza's revolver and returned fire. As the gunshots rang out, Sergeant Silcox felt a sharp, stinging pain in his right leg, believed that he had been shot, and yelled, "I'm hit, I'm hit." *Id.* at 26.

Mendoza retreated back into the store, after which Deputy Nolan observed Mendoza exiting from the business's front door. Mendoza then fired another shot at Deputy Nolan and Sergeant Silcox. As Mendoza ran across the parking lot, he raised his right hand, which held the revolver. Mendoza ran past two sheriff's cars and continued down the street with Deputy Ellison in pursuit. The deputy ordered Mendoza to stop, at which time Mendoza raised the revolver in his right hand. As Mendoza swung the revolver around toward Deputy Ellison, the deputy fired one shot. Mendoza continued run-

---

7. I.C. § 35–47–2–1.

ning and Deputy Ellison lost sight of him. Eventually, the officers caught up to Mendoza and took him into custody. All five rounds of ammunition in the revolver in Mendoza's possession had been fired.

On August 11, 2005, the State charged Mendoza with class C felony burglary, class D felony theft, two counts of class D felony resisting law enforcement, class D felony criminal recklessness, class D felony pointing a firearm, and class A misdemeanor carrying a handgun without a license. On October 14, 2005, the parties entered into a plea agreement, pursuant to which Mendoza agreed to plead guilty to class C felony burglary and class D felony criminal recklessness in exchange for the State's agreement to dismiss the remaining charges.

On October 20, 2005, the State moved to vacate the guilty plea hearing, notifying the trial court that one of the victims strongly objected to the plea agreement. The trial court granted the State's motion. On October 28, 2005, the State moved to dismiss the charging information and the trial court granted the motion. On that same day, the State refiled charges against Mendoza, filing the same charging information with an added charge of class A felony attempted murder.

On November 15, 2005, Mendoza filed a motion to dismiss, arguing that the State was without authority to dismiss the original charges and refile them with an additional, more severe count. On December 21, 2005, the trial court denied the motion to dismiss.

Mendoza waived his right to a jury trial, and his bench trial was held on July 24 and 25, 2006. At trial, he renewed the motion to dismiss, which the trial court again denied. The trial court found Mendoza not guilty of one of the charges of resisting law enforcement and found him guilty as charged on the remaining counts except for the count alleging attempted murder, for which the trial court found him guilty of the lesser-included offense of class B felony attempted aggravated battery.

The trial court held a sentencing hearing on August 9, 2006, and sentenced Mendoza as follows: twenty years for attempted aggravated battery, four years for burglary, two years for theft, one and one-half years for resisting law enforcement, two years each for criminal recklessness and pointing a firearm, and one year for carrying a handgun without a license. It ordered the aggravated battery, burglary, theft, criminal recklessness, and pointing a firearm sentences to be served consecutively, with the remaining sentences to be served concurrently, for an aggregate executed sentence of thirty years. Mendoza now appeals.

## DISCUSSION AND DECISION

### I. Motion to Dismiss

Mendoza first argues that the trial court erroneously denied his motion to dismiss, contending that the State improperly withdrew from the plea agreement and dismissed and refiled the charges against him. In appealing from the denial of his motion to dismiss, Mendoza is appealing from a negative judgment. *Lewis v. State*, 755 N.E.2d 1116, 1120 (Ind. Ct.App.2001). Where a defendant appeals from a negative judgment, we will reverse the trial court's ruling only if the evidence is without conflict and leads inescapably to the conclusion that the defendant was entitled to dismissal. *Id.*

### A. Withdrawal From Guilty Plea

As we consider the propriety of the State's decision to withdraw from the guilty plea with Mendoza, we observe that our Supreme Court has explained that there are five stages in the plea bargaining process:

First, there is the plea agreement itself.... The second stage is reached once an agreement is concluded between a prosecuting attorney and a defendant.... At the third stage, it is up to the trial court to accept or reject the plea agreement as filed.... After the trial court has accepted a plea agreement, stage four is the actual entry of the guilty plea by the defendant. The fifth stage is sentencing.

*Badger v. State*, 637 N.E.2d 800, 802–03 (Ind.1994) (footnotes omitted). Here, the parties had completed only the first two stages of the plea bargaining process by filing the plea agreement with the trial court when the prosecutor moved to dismiss the charges. At that point in time, the plea agreement was not a binding contract because it had not yet been accepted by the trial court. Consequently, there was "no procedural impediment that would have prevented *either* party from moving to withdraw the plea agreement since neither had the defendant yet entered a plea nor had the trial court formally accepted the agreement." *Id.* at 803 (emphasis in original).

■ Similarly, the defendant's acceptance of a proposed plea bargain does not create a constitutional right to have the agreement specifically enforced:

"A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution."

*Coker v. State*, 499 N.E.2d 1135, 1138 (Ind. 1986) (quoting *Mabry v. Johnson*, 467 U.S. 504, 507–08, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)). Thus, even an immediate acceptance of a plea bargain by the defendant does not create a right to have the agreement enforced. *Id.*

■ The only exception to the State's freedom to withdraw from a plea agreement before acceptance by the trial court occurs if the State has materially benefited from the terms of the agreement or the defendant has relied on the terms of the agreement to his substantial detriment. *Badger*, 637 N.E.2d at 804. In *Bowers v. State*, for example, the prosecutor agreed to dismiss charges against the defendant in exchange for information in another investigation. 500 N.E.2d 203, 204 (Ind. 1986). After the defendant provided the information in reliance on the agreement, the prosecutor reneged and refiled charges against the defendant. *Id.* Under those circumstances, the defendant had relied to his detriment on the agreement with the State, which was, in turn, not free to withdraw therefrom. *Id.*

Here, in contrast, there is no evidence that Mendoza relied to his detriment on the guilty plea agreement. Along the same lines, there is no evidence that the State materially benefited from that agreement. Consequently, the State was free to withdraw from the plea agreement and the trial court did not err in refusing to dismiss the refiled information on that basis.

After withdrawing from the plea agreement, the State moved to dismiss the charges against Mendoza. Indiana Code section 35–34–1–13(a) gives no discretion to the trial court in ruling on a motion to dismiss filed by the State: "[u]pon motion of the prosecuting attorney, the court *shall* order the dismissal of the indictment or information." (Emphasis added). Consequently, the trial court was bound to dismiss the charges at the prosecutor's request and did not err by doing so. *Joyner v. State*, 678 N.E.2d 386, 394 (Ind.1997).

### B. Refiling the Information

■ Mendoza contends that the trial court should not have permitted the State

to dismiss the information and then refile it with an added charge after the omnibus date had passed. In general, the State is free to refile a charge for the same offense when jeopardy has not already attached. *Davenport v. State*, 689 N.E.2d 1226, 1229 (Ind.1997). The State may not, however, use its authority to dismiss and refile charges if doing so will prejudice a defendant's substantial rights. *Id.*

In *Davenport,* our Supreme Court considered a situation in which, four days prior to trial, the State moved to amend the charging information by adding three new charges. The trial court denied the motion and, subsequently, the State dismissed the pending information and refiled with the new charges included. The trial court denied the defendant's motion to dismiss the three additional counts, and on appeal, our Supreme Court reversed the defendant's convictions for the three additional charges, finding that the State's conduct had been unfair:

> While courts have allowed the State significant latitude in filing a second information, the State cannot go so far as to abuse its power and prejudice a defendant's substantial rights.... [Here], for no apparent reason other than because the State knew that the court had already ruled that the State could not include those additional three counts in the information, the State moved for and was granted transfer to a different court. By doing so, the State not only crossed over the boundary of fair play but also prejudiced the substantial rights of the defendant. Because of a sleight of hand, the State was able to escape the ruling of the original court and pursue the case on the charges the State had sought to add belatedly.

*Id.* at 1230.

Mendoza argues that here, the State prejudiced his substantial rights by seek-ing to avoid a potentially adverse ruling. Specifically, Indiana Code section 35–34–1–5(b) prohibits amendments of substance to the charging information unless made more than thirty days prior to the omnibus date, which had passed by the time the State dismissed and refiled the charges against Mendoza. Unlike in *Davenport,* however, the prosecutor here was not attempting to circumvent a trial court ruling.

We find that, rather than being controlled by *Davenport,* this issue is controlled by *Malone v. State,* 702 N.E.2d 1102 (Ind.Ct.App.1998). In *Malone,* after the omnibus date had passed, the State dismissed pending charges against the defendant and refiled an amended information that included a new count for attempted murder. The defendant argued that the State's actions were merely an attempt to avoid Indiana Code section 35–34–1–5(b). We disagreed, however, concluding that because the State had not attempted to amend the information, the statute was not implicated. We then considered *Davenport,* finding that it did not apply:

> In *Davenport,* however, our [S]upreme [C]ourt found that the State's dismissal and refiling was an attempt to avoid an adverse ruling it had already received in the original trial court when it attempted to amend the information. Unlike in *Davenport,* the State here received no adverse ruling. The State was not seeking to "escape the ruling of the original court."

*Id.* at 1104 (citation omitted) (quoting *Davenport,* 689 N.E.2d at 1230).

Here, as in *Malone,* the State was not attempting to circumvent an adverse ruling it had already received.[8] Moreover, we cannot conclude that the State acted

8. We are not persuaded by Mendoza's argu- ment that "[d]ecisions by the Indiana Court of

improperly or abused its prosecutorial authority. The State refiled the charges on October 28, 2005, and Mendoza's trial did not begin until July 25, 2006; consequently, Mendoza cannot argue that he did not have adequate time to prepare a defense. Thus, there is no basis on which to conclude that the State's actions prejudiced Mendoza's substantial rights. We find, therefore, that the trial court did not err by denying Mendoza's motion to dismiss.

## II. Sufficiency of the Evidence

[9–13] Mendoza next argues that there is insufficient evidence supporting his conviction for attempted aggravated battery. When considering a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Wright v. State*, 828 N.E.2d 904, 905 (Ind.2005). Instead, we will consider only the probative evidence and the reasonable inferences that may be drawn therefrom in support of the verdict. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). If the probative evidence and reasonable inferences could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt, the conviction must be affirmed. *Id.* A conviction may be based entirely on circumstantial evidence. *Franklin v. State*, 715 N.E.2d 1237, 1241 (Ind.1999). The circumstantial evidence need not overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Kriner v. State*, 699 N.E.2d 659, 663 (Ind.1998).

To convict Mendoza of class B felony attempted aggravated battery, the State was required to prove beyond a reasonable doubt that Mendoza engaged in conduct that constituted a substantial step toward knowingly or intentionally inflicting an injury that created a substantial risk of death or an injury that would cause serious permanent disfigurement or the protracted loss or impairment of the function of a bodily member or organ. I.C. § 35–41–5–1, § 35–42–2–1.5.

Here, Deputy Nolan testified that Mendoza pointed the revolver at Sergeant Silcox and the deputy and fired two shots in their direction. Tr. p. 107, 109, 119. This was sufficient evidence to support Mendoza's conviction for attempted aggravated battery. *See Meriweather v. State*, 659 N.E.2d 133, 142 (Ind.Ct.App.1995) (affirming conviction for attempted aggravated battery where defendant had fired handgun at victim), *abrogated in part on other grounds by Wright v. State*, 658 N.E.2d 563 (Ind.1995).

Mendoza argues that Deputy Nolan's testimony was incredibly dubious because there is allegedly no other evidence in the record corroborating his testimony and because the deputy allegedly contradicted himself during his testimony. Initially, we emphasize that inconsistencies in the evidence are for the factfinder to evaluate. *Miller v. State*, 770 N.E.2d 763, 774–75 (Ind.2002). In other words, it is the role of the factfinder, not the reviewing court, to determine what evidence to believe. *Id.* Thus, Mendoza's suggestion that we focus on the testimony of the other officers and certain physical evidence that he insists corroborates his version of events is a request that we reweigh the evidence—a practice in which we do not engage when evaluating the sufficiency of the evidence supporting a conviction.

As for Mendoza's argument that Deputy Nolan's testimony is incredibly dubious, we observe that the application of this doc-

Appeals reaching a contrary result," including *Malone,* "are simply wrongly decided."

Appellant's Br. p. 18.

trine is limited to cases where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt. *Thompson v. State*, 765 N.E.2d 1273, 1274 (Ind.2002). Reversal under this rule is rare and the testimony must be "so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind.2002).

Mendoza's claim that the deputy's testimony is inherently dubious because two of the bullets Mendoza fired were not found near Sergeant Silcox's location is of no moment, inasmuch as all five rounds in the revolver had been fired and any of the three bullets that were not ultimately located could have been fired in the sergeant's direction. Additionally, although Mendoza emphasizes that the deputy did not mention during direct examination that Mendoza had fired in his and Sergeant Silcox's direction after exiting the store, we merely observe that it was only during cross-examination that Deputy Nolan was asked specifically about the occurrence. Consequently, we do not find the testimony to be incredibly dubious and we find sufficient evidence supporting Mendoza's conviction for attempted aggravated battery.

### III. Sentencing

#### A. Anglemyer and the Amended Sentencing Scheme

Before addressing the merits of Mendoza's arguments, we observe that on April 25, 2005, the General Assembly amended Indiana's felony sentencing statutes,[9] which now provide that the person convicted is to be sentenced to a term within a range of years, with an "advisory sentence" somewhere between the minimum and maximum terms. *See* Ind.Code §§ 35–50–2–3 to –7. When determining the sentence to impose on a defendant, the trial court "may consider" certain enumerated aggravating and mitigating circumstances in addition to other matters not listed in the statute. I.C. §§ 35–38–1–7.1(a) to –7.1(c). Furthermore, the legislature provided that a trial court "may impose any sentence that is ... authorized by statute ... regardless of the presence or absence of aggravating circumstances or mitigating circumstances." I.C. § 35–38–1–7.1(d).

Notwithstanding this provision, the legislature kept in place a requirement that, when sentencing a defendant for a felony conviction, if the trial court finds aggravating or mitigating circumstances, it must create "a statement of the court's reasons for selecting the sentence it imposes." I.C. § 35–38–1–3(3). Our Supreme Court recently concluded, therefore, that the "new statutory regime" mandates that trial courts must enter sentencing statements whenever imposing sentences for felony convictions. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007).

 Sentencing statements are *not* required to contain a finding of aggravators or mitigators; rather, they need in-

---

**9.** Here, Mendoza committed the crimes after the April 2005 amendment of the sentencing statutes; thus, we will apply the amended versions thereof. Mendoza argues that the sentences imposed by the trial court run afoul of the *Blakely* rule. Inasmuch as the amended sentencing scheme was specifically enacted to incorporate advisory sentences rather than presumptive sentences and to comply with the holdings in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), however, we find that the trial court's actions herein do not implicate *Blakely*.

clude only a "reasonably detailed recitation of the trial court's reasons for imposing a particular sentence." *Id.* If the statement does, however, include a finding of aggravators or mitigators, then it must "identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating." *Id.*

 Essentially, a defendant may now make two types of challenges to the trial court's imposition of a felony sentence—process-based and result-based. We review challenges to the trial court's sentencing process for an abuse of discretion. *Id.* at 490 (concluding that "[s]o long as the sentence is within the statutory range, it is subject to review only for abuse of discretion"). The trial court may abuse its discretion in the following ways during the sentencing process: (1) by failing to enter a sentencing statement; (2) by entering a sentencing statement that includes reasons not supported by the record; (3) by entering a sentencing statement that omits reasons clearly supported by the record and advanced for consideration; or (4) by entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* We hasten to note that even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate. *See Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007) (holding that in the absence of a proper sentencing order,[10] we may either remand for resentencing or exercise our authority to review the sentence pursuant to Rule 7(B)).

 If a defendant chooses to challenge the *result* of the sentencing process—i.e., the sentence itself—then he or she must do so via Appellate Rule 7(B), which provides that the "[c]ourt may review a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *See Anglemyer*, at 491 (holding that because "a trial court [cannot] now be said to have abused its discretion in failing to 'properly weigh'" aggravators and mitigators, if the trial court enters a proper sentencing statement then the only way a defendant can challenge the sentence is via Rule 7(B)). In reviewing a Rule 7(B) appropriateness challenge, we defer to the trial court. *Stewart v. State*, 866 N.E.2d 858, 866 (Ind.Ct.App.2007). The burden is on the defendant to persuade us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006).

### B. Sentencing Process

 Here, the trial court entered an oral sentencing statement at the conclusion of the sentencing hearing. The trial court found the following aggravators: the fact that in several of the crimes—other than the resisting law enforcement offense—the victims were all law enforcement officers; the number of crimes committed—eight—within this episode of criminal conduct; the number of victims; and the fact that the item that Mendoza stole was a gun. It is apparent that by highlighting the facts that the victims of some of Mendoza's crimes were law enforcement officers and that the item he stole was a gun, the trial

---

10. The trial court in *Windhorst* did not enter a sentencing statement and merely sentenced Windhorst to the advisory term without explaining its reasons for doing so. Our Supreme Court acknowledged, however, that the trial court did not have the benefit of the *Anglemyer* ruling and, instead, relied upon long-standing precedent that required no such sentencing statement under these circumstances. *Windhorst,* at 506.

court impliedly found the seriousness of the offenses—which includes the nature and circumstances of the crimes and the manner in which they were committed—as an aggravator. This has "long been held" to be a valid aggravator and is supported by the record herein. *Anglemyer,* 868 N.E.2d at 492. Moreover, it is well established that the fact of multiple victims or crimes—and here, there were both—constitutes a valid aggravating factor. *O'Connell v. State,* 742 N.E.2d 943, 952 (Ind. 2001). Thus, the trial court considered lawful aggravators that were supported by the record.

As for Mendoza's proffered mitigators, the trial court rejected alcohol abuse as a mitigating circumstance because the officers did not detect a significant odor of alcohol on him on the night in question and, in reviewing the videotape of Mendoza while he was inside the store, the trial court observed that he was not "falling down drunk or out of control of his faculties." Tr. p. 221. Consequently, there was neither evidence that he was impaired at the time of the incident nor evidence of a nexus between alcohol abuse and the commission of these offenses. The trial court also rejected the proffered mitigator of mental illness because there was no evidence in the record to support it. The trial court found Mendoza's lack of a prior criminal history to be a mitigating circumstance but declined to find his acceptance of responsibility to be a significant mitigator because the offered plea bargain "was a pretty sweet deal," and, in any event, Mendoza did not ultimately plead guilty. *Id.* The trial court's conclusions regarding Mendoza's proffered mitigators are all supported by the record; consequently, it did not abuse its discretion in this regard.

Ultimately, therefore, we find that the trial court did not abuse its discretion during the process of sentencing Mendoza. It issued a sentencing statement, it found lawful aggravators supported by the record, it found a lawful mitigator supported by the record, and rejected proffered mitigators that did not have support in the record.

## C. Result

 Mendoza next argues that the sentences imposed by the trial court are inappropriate in light of the nature of the offenses and his character. App. R. 7(B). As to the nature of the offenses, we observe that Mendoza burglarized a store by smashing a hole in the door. He eventually found and stole the store owner's loaded revolver. After the officers arrived and announced their presence, Mendoza test-fired the weapon before attempting to flee the store. He pointed the weapon at Sergeant Silcox and Deputy Nolan and fired two shots in their direction. After Mendoza left the building, he continued to point the gun at police officers, refused their orders to stop, and did not surrender until all of the rounds in the revolver had been fired.

Mendoza complains that maximum sentences are reserved for the worst offenses and offenders, *Brown v. State,* 760 N.E.2d 243, 247 (Ind.Ct.App.2002), and argues that he does not fit into those categories. In response, we again emphasize that Mendoza repeatedly fired a loaded revolver at two officers who were in full uniform, performing their duties. *See Petruso v. State,* 441 N.E.2d 446, 450 (Ind.1982) (finding that the fact that defendant attempted to murder a police officer who was performing his duties was a proper aggravator). As our Supreme Court has commented,

> [p]olice officers routinely risk their lives in the sometimes high stakes gamble of protecting society. They do a job that

we all want and need done, though few of us possess the bravery and skill to do. They ask for little in return, but they do ask for some protection.

*Salyers v. State,* 862 N.E.2d 650, 654 (Ind. 2007) (citations omitted). Under these circumstances, we do not find that the reservation of maximum sentences for the worst offenses and offenders renders Mendoza's sentences inappropriate.

As for Mendoza's character, we note, as did the trial court, that Mendoza has no prior criminal history. But given the nature of the offenses, we are persuaded that the aggregate thirty-year sentence imposed by the trial court is not inappropriate.

### D. Consecutive, Enhanced Sentences

 Finally, Mendoza argues that the trial court erroneously imposed consecutive, enhanced sentences. Specifically, Mendoza contends that the amended sentencing scheme only empowers a trial court to impose a consecutive sentence if it imposes the advisory sentence for that crime. Indiana Code section 35–50–2–1.3(c) provides, in relevant part, as follows:

> In imposing consecutive sentences in accordance with I.C. 35–50–1–2 . . . a court is required to use the appropriate advisory sentence in imposing a consecutive sentence or an additional fixed term. However, the court is not required to use the advisory sentence in imposing the sentence for the underlying offense.

Mendoza argues that this statute authorizes the trial court to impose only *advisory,* consecutive sentences.

This argument highlights a split of authority on our court. In analyzing the amended sentencing statutes, different panels of this court have reached different conclusions regarding the interaction between Indiana Code sections 35–50–1–2(c)

and –1.3(c). In *White v. State,* we found that trial courts are authorized to impose enhanced, consecutive sentences:

> Indiana Code § 35–50–2–1.3 instructs: "In imposing consecutive sentences in accordance with IC 35–50–1–2[,] a court is required to use the appropriate advisory sentence in imposing a consecutive sentence[.]" We conclude that when the General Assembly wrote "appropriate advisory sentence," it was referring to the total penalty for "an episode of criminal conduct," which, except for crimes of violence, is not to exceed "the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." *See* Ind. Code § 35–50–1–2(c). In other words, the advisory sentence for a felony which is one class of felony higher than the most serious of the felonies for which the person has been convicted is the "appropriate advisory sentence" for an episode of non-violent criminal conduct. Indiana Code § 35–50–1–2 in no other way limits the ability of a trial court to impose consecutive sentences. In turn, Indiana Code § 35–50–2–1.3, which references Indiana Code § 35–50–1–2, imposes no additional restrictions on the ability of trial courts to impose consecutive sentences.

849 N.E.2d 735, 743 (Ind.Ct.App.2006), *trans. denied.*

In *Robertson v. State,* a separate panel rejected the *White* analysis and, instead, held that "the advisory sentencing statute, IC 35–50–2–1.3, is clear and unambiguous and imposes a separate and distinct limitation on a trial court's ability to deviate from the advisory sentence for any sentence running consecutively." 860 N.E.2d 621, 625 (Ind.Ct.App.2007), *trans. grant-*

*ed.*[11] The *Robertson* court expressed concern about the result in *White:*

> Our concern with the analysis in *White* is that (1) it renders the language in IC 35–50–2–1.3 surplusage since the consecutive sentencing statute, IC 35–50–1–2, clearly limits the total of the consecutive sentences for non-violent offenses to the advisory sentence for the next highest class of felony; and (2) nothing in the advisory sentencing statute, IC 35–50–2–1.3, limits its application to non-violent offenses. Although the *White* decision argues that the legislature could not have intended the results the statute is capable of generating, the argument is moot "[w]hen the language of the statute is clear and unambiguous." 849 N.E.2d at 742–43.

*Id.* at 624–25 (citation omitted). Ultimately, the *Robertson* court remanded the case to the trial court with instructions that it reduce the enhanced, consecutive sentence to the advisory sentence.

Recently, another panel of our court denounced the *Robertson* analysis and, instead, applied the *White* analysis. *Barber v. State*, 863 N.E.2d 1199, (Ind.Ct.App. 2007). Specifically, the *Barber* court found that the amended sentencing statutes do not limit a trial court's authority to impose enhanced, consecutive sentences:

> Indiana Code § 35–50–2–1.3 serves another very important purpose. In the wake of *Blakely v. Washington*, 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403] (2004), and *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), our legislature transformed Indiana's sentencing scheme from a presumptive scheme to an advisory scheme. Under the former presumptive scheme, a trial court was required to impose the "presumptive" sentence for a felony conviction unless the court found aggravating circumstances to enhance the sentence or mitigating circumstances to reduce the sentence. Under the new advisory scheme, trial courts are generally *not* required to use an advisory sentence. *See* I.C. § 35–50–2–1.3 ("Except as provided in subsection (c), a court is not required to use an advisory sentence."). Because an advisory sentence is in most cases exactly that—advisory—the legislature included subsection (c) of Indiana Code § 35–50–2–1.3 to remind Indiana's trial courts of those statutory provisions that *do* require the "use" of an advisory sentence[, in relevant part,] in imposing consecutive sentences in accordance with Indiana Code § 35–50–1–2.... We acknowledge that nothing in Indiana Code § 35–50–2–1.3(c) limits its application to any specific subsections of Indiana Code §§ 35–50–1–2, 35–50–2–8, and 35–50–2–14, but each of those statutes only includes one subsection that refers to advisory sentences.

*Id.* at 1211 (emphases in original).

We are persuaded that the better analysis is that set forth in *White* and *Barber*. When we read Indiana Code section 35–50–2–1.3 in conjunction with section 35–50–1–2, it is apparent that the reference to the "appropriate advisory sentence" was meant to apply to situations involving the single episode of criminal conduct limitation on consecutive sentencing. This statute was not intended to place any other limits on a court's ability to impose consecutive sentences. Contrary to the conclusion of the *Robertson* court, we do not believe that this interpretation renders the statutory language to be surplusage; rather, it provides clarification regarding what

---

**11.** We acknowledge that the *Robertson* opinion has been vacated pursuant to our Supreme Court's grant of transfer. We refer to the vacated opinion merely to illuminate our discussion of the split of authority on this issue.

advisory sentence is to be used when the single episode of criminal conduct limitation is applicable. We also note that a troubling consequence of the *Robertson* analysis would be that trial courts would be prohibited from imposing enhanced, consecutive sentences on the worst offenders. That cannot have been the intent of our legislature. Consequently, we find that the trial court herein had the authority to impose enhanced, consecutive sentences, and did not err by doing so.[12]

█ Finally, we note that Mendoza argues, and the State concedes, that there is a typographical error in the abstract of judgment. Specifically, the abstract incorrectly indicates that Mendoza was convicted of attempted murder when it should, instead, show a conviction for attempted aggravated battery. We remand this matter to the trial court, therefore, with instructions to correct the abstract of judgment.

The judgment of the trial court is affirmed and remanded with instructions to amend the abstract of judgment by deleting the reference to an attempted murder conviction and adding an attempted aggravated battery conviction in its place.

FRIEDLANDER, J., concurs.

CRONE, J., concurs in result.

---

12. We also note that Mendoza's crimes were not statutorily-defined crimes of violence and that the crimes arose out of a single episode of criminal conduct. Consequently, the aggregate sentence imposed by the trial court was limited to the advisory sentence for a felony one class higher than the most serious of the felonies for which Mendoza had been convicted. I.C. §§ 35–50–1–2(a), –2(c). Mendoza's most serious conviction was for a class B felony, and the advisory sentence for a class A felony is thirty years. I.C. § 35–50–2–4. Thus, the thirty-year aggregate sentence imposed by the trial court complied with the applicable statutes.