Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JAMI C. SIPICH, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 45A03-1212-CR-524 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-1203-FA-4

**August 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jami C. Sipich appeals her sentence for attempted robbery as a class A felony. We address whether Sipich's sentence is inappropriate in light of the nature of the offense and her character. We affirm.

FACTS AND PROCEDURAL HISTORY

On Sunday, March 4, 2012, at approximately 11:00 a.m., Sipich entered a Wendy's restaurant in Lake Station, Lake County, Indiana. She wore a bandana around her face so that only her eyes were visible, a sock hat, a baseball cap over the hat, and the hood of her sweatshirt pulled over her head, and she was carrying a knife.

Alexis Rodriguez, an employee of Wendy's, was located behind the counter with several other employees and was facing Anita Dumais, a manager of the restaurant who was standing in the doorway of an office. Sipich approached Rodriguez, placed her arm around Rodriguez's neck, and placed the silver blade of the knife by her neck. Rodriguez said "[w]hat are you doing," and Dumais pushed Sipich. Transcript at 34, 119. Sipich grabbed Rodriguez again and stated "I'm robbing you" and "[g]ive me the money." Id. at 35, 119. Another employee of the restaurant stated: "There's no money. It's Sunday. There's no money." Id. at 37.

Rodriguez had her arm up attempting to hold Sipich's arm to keep from being cut. Sipich pulled the knife away from Rodriguez's neck and then "jab[bed] it in [Rodriguez's] neck." Id. at 120. Rodriguez felt a burning pain, felt blood coming from her neck, and could not swallow. Sipich pulled the knife out of Rodriguez's neck, and when Rodriguez raised her hand in defense, Sipich stabbed her again, and the knife went through her hand and into her cheek. Dumais called 911 using her cell phone. Sipich

2

began to run away and stabbed Rodriguez in her side before continuing to flee. Sipich entered a white truck and quickly drove away from the restaurant. Rodriguez bled profusely, and her colleagues attempted to help her stop the bleeding which included placing a sweatshirt around her neck. Rodriguez was transported to the hospital by ambulance.

A police officer observed Sipich's vehicle and attempted to initiate a traffic stop. Sipich failed to stop, made several sudden turns, and then sped up before eventually coming to a stop near an alley. Several officers positioned their vehicles around Sipich's vehicle, ordered Sipich to exit the truck, and apprehended her.

In its amended information filed on September 17, 2012, the State charged Sipich with: Count I, attempted robbery as a class A felony; Count II, attempted robbery as a class B felony; Count III, aggravated battery as a class B felony; Count IV, battery as a class C felony; and Count V, battery as a class C felony.[1] During the jury trial, the jury heard testimony from Dumais, Rodriguez, John Papka, a paramedic who responded to the scene of the restaurant, Sipich, police officers who responded to the incident, and several others, and the State presented photographs of the scene of the restaurant and the injuries sustained by Rodriguez.

Dumais testified that, after Sipich had grabbed Rodriguez and initially cut her neck, Dumais "grabbed [her] cell phone and started dialing 911 and [Sipich] took off. And when [Sipich] was running she ran and stabbed [Rodriguez] again. Because by this time [Rodriguez] had moved back because she was bleeding so bad . . . ." Id. at 39. On

---

[1] The State initially charged Sipich on March 6, 2012. The charges were later amended on September 12, 2012 and September 17, 2012.

cross-examination, Dumais testified that she "dialed 911 and [Sipich] left" and that "as [Sipich] was leaving, she stabbed [Rodriguez] to the side." Id. at 74. Rodriguez testified that, after she was initially stabbed, she "got loose" and was "standing by the grill," that Sipich "went to go run out," and that "when she went to go run out she turned and she stabbed me again in my side and then kept running out." Id. at 121.

Papka, who was a responding paramedic, testified that, when he arrived at the scene, he observed a large pool of blood in the cook area, "probably a liter to a liter and a half of blood was all over on the floor," and that Rodriguez was "pale, cool, and clammy." Id. at 217. As Papka attempted to evaluate the severity of the neck injury because it was in a critical area, Rodriguez said "[d]on't let me die," and Papka replied "[n]ot today." Id. at 220. Papka testified that Rodriguez sustained a stab wound or "external jugular cut approximately a half inch to three quarters of an inch in length, unknown depth," a stab wound on the cheek which was approximately one-half inch in length, a third stab wound on her right hand which was approximately one to one and one-quarter inches in length, and a fourth stab wound in her torso "approximately a half inch in length. Depth unknown." Id. at 228-229.

Sipich testified that she struggled with Rodriguez, that Rodriguez grabbed the knife and pulled it away from her, and that she put the knife back to Rodriguez's neck. When asked if she cut Rodriguez, Sipich responded that she did, but not intentionally, and that Rodriguez "grabbed the knife and I was tying to hold it and . . . she let go and it just jerked back and that's how [Rodriguez] got cut." Id. at 296. Sipich testified that she did not expect to hurt anybody. Sipich further testified that she was trying to figure out a

4

way to obtain money for rent, that she had asked several people for help, that she had passed the Wendy's and did not see anybody in the parking lot, and then "just snapped and turned around and I went back." Id. at 294. The jury found Sipich guilty on all counts. The court entered judgment on Count I and not on Counts II, III, IV, and V.

On November 8, 2012, the court held a sentencing hearing at which Rodriguez testified. Sipich's counsel argued that, at the time of the offense, she had recently been released from prison and that she and another person were about to be evicted from their residence. Sipich argued that she saw an opportunity, that it was a brash and abrupt decision, and that she was not thinking rationally. Sipich further argued that she is diagnosed as being manic depressive and takes medication on a daily basis, that she was molested at a young age by her paternal grandfather, and that she was introduced to drugs by her father. The State noted that, at the time of this offense, Sipich was on probation stemming from another armed robbery for which she had previously been incarcerated. The State asserted that Sipich stabbed Rodriguez in the neck, the hand, the cheek, and the side, and that Sipich could have gone to a homeless shelter or a soup kitchen but decided to violently rob a victim at Wendy's. The State also noted that Sipich had a history of delinquency and a battery resulting in bodily injury as a juvenile, that she has been in and out of the criminal justice system for eighteen years, and that her acts have become progressively more violent. Sipich testified that she was very lonely and filled out job applications for hours, that she and her father fought constantly, that she and a friend made money "junking with [her] truck," that her friend had a daily Afrin habit, that they did not have any more money, and that she thought she was going to be living in her

5

truck. Id. at 364. She also testified that she did not mean to stab Rodriguez, that she was sorry, that it was an accidental thing, that had she been stabbing Rodriguez on purpose she would be dead, and that the knife was just supposed to be a prop.

In its sentencing order, the court stated that it found no mitigating circumstances and the facts that Sipich was on probation at the time of the offense and has a history of criminal convictions which includes robbery resulting in bodily injury as a class B felony to be aggravating circumstances. The court sentenced Sipich to thirty-seven years in the Department of Correction.

DISCUSSION

The issue is whether Sipich's sentence is inappropriate. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate.[2] Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Sipich contends that the robbery had been an impulse decision, that it was never her intention to harm anyone, and that she expressed remorse that she had harmed someone during her rash decision. Sipich asserts that she was about to be evicted from her residence at the time of the robbery, that she is manic depressive, that she was

_____

[2] To the extent that Sipich argues that the trial court abused its discretion in sentencing her, we observe that "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate." Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), trans. denied. Accordingly, we need not address this issue because we review her sentence under Ind. Appellate Rule 7(B). See Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that where the court on appeal finds that a trial court abused its discretion in sentencing the defendant, the court may either remand for resentencing or exercise the appellate court's authority to review the sentence under Ind. Appellate Rule 7(B)), reh'g denied.

molested by her grandfather, and that she was introduced to drugs by her father. She contends that, although she was on probation for another robbery, her prior criminal record was relatively minor. While she admits that the nature of the offense is serious in that Rodriguez suffered serious injuries, Sipich argues that she did not attempt to harm Rodriguez and that her lack of intent to harm the victim makes the nature of the offense not as severe as if she had intentionally harmed her. Sipich maintains that the major problem with her sentence involves her character, including the fact that she was molested by her paternal grandfather, that she was under economic distress when she attempted the robbery, and that the robbery attempt was a sudden decision and not something she planned in advance. Sipich also argues that she had been diagnosed as manic depressive while incarcerated but had no prior treatment or medication for her condition and that her depression would have affected her ability to think clearly and make rational decisions.

The State maintains that Sipich's sentence is not inappropriate, that her actions were extreme, even for a class A felony robbery, that she grabbed the victim and put a knife to her throat, that, when told there was no money, she cut the victim's external jugular vein in an attempt to take approximately one hundred dollars from the register, and that she then caused a cut that went through the victim's hand and into her cheek. The State argues that Sipich also stabbed Rodriguez one more time in the side of her body before running away. The State posits that Sipich's actions reveal that she is willing to use extreme criminal violence in order to achieve even minor goals. In addition, the State contends that Sipich's stabbing of the victim after she began to flee

7

demonstrates her willingness to inflict harm for purely vindictive reasons. With respect to Sipich's character, the State points out that her first contact with law enforcement occurred when she was fifteen years of age when she was arrested for delinquency for battery resulting in bodily injury as a class A misdemeanor if committed by an adult, that as an adult she was convicted for robbery as a class B felony in 2008, and that she violated the terms of her probation and was wanted on an active bench warrant when she was sentenced for the instant offense. The State further argues that Sipich has a long history of using violence and an inability to rehabilitate herself.

Our review of the nature of the offense reveals that, when driving past Wendy's restaurant, Sipich did not see anybody in the parking lot, turned around and went back, and entered the restaurant. She wore a bandana around her face so that only her eyes were visible, a sock hat, a baseball cap over the hat, and the hood of her sweatshirt pulled over her head, grabbed Rodriguez from behind, and placed a knife to her throat. Rodriguez attempted to hold Sipich's arm to prevent from being cut, and Sipich "jab[bed the knife] in [Rodriguez's] neck." Transcript at 120. Rodriguez raised her hand in defense, Sipich stabbed her again, and the knife went through her hand and into her cheek. After Dumais called 911, Sipich stabbed Rodriguez in her side and fled the scene. Rodriguez testified that she "got loose" and that "when [Sipich] went to go run out she turned and she stabbed [her] again in [her] side and then kept running out." Id. at 121. Rodriguez bled profusely and sustained an external jugular cut, stab wounds on her cheek and hand, and a stab wound in her torso, among other injuries. Sipich initially failed to

stop her vehicle for police and made several sudden turns and sped up before eventually being apprehended.

Our review of the character of the offender reveals that Sipich stated that she was molested as a child, introduced to drugs by her father, that she was remorseful, manic depressive, and in a desperate financial condition at the time of the offense. According to the presentence investigation report (the "PSI"), Sipich's juvenile criminal history includes a 1994 finding of delinquency for battery resulting in bodily injury as a class A misdemeanor if committed by an adult and 1996 findings for possession of marijuana and minor consuming alcohol as misdemeanors if committed by an adult. As an adult, Sipich was convicted of operating while intoxicated as a misdemeanor for an arrest in 2000; operating a vehicle with a schedule I or II controlled substance in the body as a misdemeanor for an arrest in 2003; driving while suspended as a misdemeanor for an arrest in 2004; and robbery resulting in bodily injury as a class B felony for an arrest in 2008, for which she was sentenced to twelve years with two years suspended to probation. In addition, the PSI indicates that Sipich violated the terms of her probation with respect to her 1996 juvenile adjudication due to a failed drug test and had an active bench warrant due to a probation violation with respect to her class B felony conviction. Also, under "Mental Referrals," the PSI lists manic depression and anxiety, and under "Alcohol/Drug Use," the PSI lists alcohol, marijuana, crack cocaine, and ecstasy. Appellant's Appendix at 134. The PSI states that Sipich lived with her father following her parents' divorce, that her father used drugs and alcohol, and that she was molested by her paternal grandfather. The PSI further states that Sipich worked for an employer for

9

six months in 2007 but stopped going to work because she "was getting high." Appellant's Appendix at 138. The results of Sipich's risk assessment indicate that her overall risk assessment score puts her in the high risk to reoffend category. The PSI also notes that Sipich has used alcohol and drugs extensively since age ten and that she has been enrolled in substance abuse treatment programs but has never completed them.

Under the circumstances and after due consideration of the trial court's decision and of the record, we conclude that Sipich has not sustained her burden of establishing that her sentence of thirty-seven years is inappropriate in light of the nature of the offense and her character.

## CONCLUSION

For the foregoing reasons, we affirm Sipich's sentence for attempted robbery as a class A felony.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.