## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2019, 11:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Of Counsel, Austin & Jones, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roderick Nelson,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

July 31, 2019

Court of Appeals Case No.
19A-CR-218

Appeal from the Marion Superior Court

The Honorable Lisa F. Borges, Judge

Trial Court Cause No.
49G04-1707-F2-25324

**Brown, Judge.**

[1] Roderick Nelson appeals his sentence for armed robbery as a level 3 felony as enhanced by his status as an habitual offender, residential entry as a level 6 felony, and two counts of unlawful possession of a firearm by a serious violent felon as level 4 felonies. He raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offenses and his character. We affirm.

## Facts and Procedural History

[2] In June 2017, Herbert Coleman, who went by the nickname Big Baby and has chronic degenerative disk disease and chronic back pain, lived in a house in Indianapolis with his son and his son's girlfriend. At that time, Coleman knew Nelson by the nickname Roger and had known him for about a month and a half, and he had been to Coleman's house a couple of times with one of Coleman's friends.

[3] On June 20, 2017, Coleman was awakened by Nelson who was nudging him in the face with a gun. Nelson was with Lemon, a man Coleman knew from the neighborhood, and "a white guy that had [a] yellow bandanna over his face" looking in the window. Transcript Volume II at 54. Coleman tried to reach for his pellet pistol, but Nelson told him, "Uh-uh, uh-uh, move, move," and made him sit down. *Id.* Nelson pulled the mattress out and "tore the bed up looking for stuff." *Id.* at 55.

[4] Nelson made Coleman move from the bed to a chair, told him to sit there, and took his wallet out of his pocket, which contained forty or fifty dollars, his bank

card, and his insurance disability card. While Coleman was sitting in the chair, Nelson said: "You must don't know who I am. I'm Roger." *Id.* at 61. Nelson raised up his shirt, and Coleman observed a scar from his navel to his chest. Lemon stood at the back door "watching out," while the white male was "loading stuff," including his TVs and a DVD player, and "taking it out to the SUV." *Id.* at 56. Nelson took Coleman's collection of DVDs. One of the men threw Coleman's glucose meter in a five-gallon bucket of paint. Nelson and the others left in a white SUV, and Coleman called 911.

[5] Meanwhile, Coleman's neighbor, Edward Embry, who had suffered a stroke in 2009 and was on disability, lived with his wife Stacey and had a camera at his back door which allowed him to view the back of Coleman's property. He observed Nelson and others place things in a white SUV.

[6] Sometime later, Embry and Stacey saw Nelson talking to a friend, and Stacey called the friend and told the friend he did not need to be around Nelson if he was doing what everybody said he did, but she did not realize she was on speakerphone during the call. Later, Nelson and two other people entered Embry's home through a closed screen door. Nelson had a pistol with him and told Embry and Stacey that he "didn't do something," and Embry told him that he did not care and to go back outside. *Id.* at 107. Nelson said "your wife, you know, running her mouth." *Id.* He also said, "Eddie, I respect you," put his hand on his pistol, and started to bring the pistol up when Stacey jumped in the middle and started screaming, "No, don't do it. It's not worth it, don't, don't, don't don't." *Id.* at 107, 128. Embry also had a gun and told Nelson: "My wife

ain't got nothing to do with this." *Id.* at 108. He also yelled at the two people with Nelson: "This s*** is gonna to get you guys killed." *Id.* at 108. Nelson and the others then left.

[7] On July 10, 2017, the State charged Nelson with: Count I, burglary as a level 2 felony; Count II, armed robbery as a level 3 felony; Count III, unlawful possession of a firearm by a serious violent felon as a level 4 felony; Count IV, residential entry as a level 6 felony; Count V, pointing a firearm as a level 6 felony; and Count VI, unlawful possession of a firearm by a serious violent felon as a level 4 felony. On November 13, 2018, the State filed a notice of intent to have Nelson sentenced as an habitual offender.

[8] In December 2017, Coleman was placed in Marion County Jail II, also known as the CCA, and was placed in the same room as Nelson during the first day. At some point, another inmate gave Coleman a note from Nelson which read in part:

> I'm sorry what happened. I was cracked out and lost bad. Everyday I sit here want take things that I done. I'm sorry and I hope you can forgive me Big Bro. Look, my mother is at old age and I'm not trying to be in prison for life knowing that I couldn't say bye, Bro. I was off all types of drugs Big Baby. Please forgive me.

*Id.* at 165.[1]

[9] On November 26 and 27, 2018, the court held a jury trial. The jury found Nelson guilty of armed robbery as a level 3 felony and residential entry as a level 6 felony and not guilty of burglary as a level 2 felony and pointing a firearm as a level 6 felony. Nelson then pled guilty to two counts of unlawful possession of a firearm by a serious violent felon as level 4 felonies and admitted to his status as an habitual offender.

[10] At the sentencing hearing, Nelson's counsel asked for a total sentence of twenty-four years with sixteen years in the Department of Correction ("DOC") and eight years in community corrections. The court found Nelson's criminal history to be a significant aggravator, noted his conduct at the DOC, and acknowledged he had not had problems while at the CCA. The court stated: "I do find that the victims – the couple that lived next door are clearly disabled and infirm. And that the victim of this offense was a disabled individual. And I think its something that you knew." Transcript Volume III at 28. The court recognized that he had admitted to some of the charges and being an habitual offender as mitigators. The court found that the aggravators far outweighed the mitigators.

---

[1] The text of the letter included in the record is difficult to decipher. When Detective Wanda Perry was asked to read the letter aloud, she provided the foregoing text in her answer without objection.

[11]     The court sentenced Nelson to sixteen years for Count II, armed robbery as a level 3 felony, and enhanced that sentence by twenty years for his status as an habitual offender, twelve years for Count III, unlawful possession of a firearm by a serious violent felon as a level 4 felony, two years for Count IV, residential entry as a level 6 felony, and ten years for Count VI, unlawful possession of a firearm by a serious violent felon as a level 4 felony. The court ordered that the sentences for Counts II and III be served consecutive to each other, that the sentence for Count IV be served concurrent to Count VI, and that Count VI be served consecutive to Count III. The court stated: "I will recommend the Therapeutic Community. However, I will not consider a sentence modification for that, all right. . . . I'm not going to put you on probation or Community Corrections, or suspend any of that time. I just think that that has never worked for you, and to [sic] I am not going to do that." *Id.* at 29.

## *Discussion*

[12]     The issue is whether Nelson's sentence is inappropriate in light of the nature of the offenses and his character. Nelson argues that he was sentenced to the maximum sentences for Count II, robbery as a level 3 felony, and Count III, possession of a firearm by a serious violent felon as a level 4 felony. He contends that his criminal history, while lengthy, does not involve much in the way of violent crimes. He also argues that there was no evidence presented that he knew or should have known about the infirmities of Coleman and Embry. He contends that he will be unable to provide emotional or financial support to his children during the remainder of their childhood due to his sentence, that he

pled guilty to two counts of unlawful possession of a firearm as a serious violent felon and admitted to being an habitual offender, that he apologized to Coleman before trial, that he had never been offered the opportunity to participate in a substance abuse program while in prison, and that he completed four twelve-week programs regarding living without violence, substance abuse, victim impact, and living positively. The State argues that Nelson's sentence is not inappropriate in light of his extensive criminal history, disrespect for the law, illegal possession of firearms, and threats of violence against multiple disabled victims.

[13] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[14] Ind. Code § 35-50-2-5 provides that a person who commits a level 3 felony "shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years." Ind. Code § 35-50-2-8 provides that a court "shall sentence a person found to be a habitual offender to an additional fixed term that is between . . . six (6) years and twenty (20) years, for a person convicted of murder or a Level 1 through Level 4 felony" and that "[a]n additional term imposed under this subsection is nonsuspendible." Ind. Code § 35-50-2-5.5 provides that a person who commits a level 4 felony "shall

be imprisoned for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." Ind. Code § 35-50-2-7 provides that a person who commits a level 6 felony "shall be imprisoned for a fixed term of between six (6) months and two and one-half (2 ½) years, with the advisory sentence being one (1) year."

[15] Our review of the nature of the offenses reveals that Coleman suffered from chronic degenerative disk disease and chronic back pain, and Nelson nudged him with a gun in the face while he was sleeping and made Coleman move from the bed to a chair. Nelson and others with him took Coleman's DVDs, TVs, a DVD player, and his wallet, which contained cash and his insurance disability card. One of the men threw Coleman's glucose meter in a five-gallon bucket of paint. Nelson later entered the home of Embry, who had suffered a stroke and was on disability, and started to bring the pistol up when Stacey jumped in the middle and started screaming. The presentence investigation report ("PSI") states: "When asked about the Instant Offense the defendant admitted, 'I took the television and sold it' admitting he used the money for drugs." Appellant's Appendix Volume III at 103.

[16] Our review of the character of the offender reveals that Nelson pled guilty to two counts of unlawful possession of a firearm by a serious violent felon as level 4 felonies and admitted to his status as an habitual offender after the jury found him guilty of armed robbery as a level 3 felony and residential entry as a level 6 felony. Nelson has a lengthy criminal history. As a juvenile, he had true findings for disorderly conduct in 1996 and possession of marijuana/hash

oil/hashish and disorderly conduct in 1997. He also had multiple charges including rioting, battery, battery resulting in bodily injury, which were either dismissed, resulted in no action taken, or in which prosecution was rejected. As an adult, Nelson has convictions for two counts of resisting law enforcement as class D felonies, failure to stop after an accident as a class B misdemeanor, and possession of marijuana/hash oil/hashish as a class A misdemeanor in 2000; resisting law enforcement as a class A misdemeanor in 2001; auto theft/receiving stolen parts as a class D felony, two counts of criminal trespass as class A misdemeanors, and resisting law enforcement as a class A misdemeanor in 2002; possession of marijuana/hash oil/hashish as a class A misdemeanor, operating a motor vehicle without ever receiving a license as a class C misdemeanor, criminal recklessness, and carrying a handgun without a license as a class A misdemeanor in 2003; possession of cocaine or a schedule I or II drug as a class D felony, robbery as a class C felony, intimidation as a class C felony, intimidation as a class D felony, criminal confinement as a class D felony, and battery as a class A misdemeanor in 2005; operating a vehicle while intoxicated in 2006; strangulation as a class D felony in 2010; strangulation as a class D felony and domestic battery as a class A misdemeanor in 2011; operating while intoxicated endangering a person and criminal conversion as class A misdemeanors in 2012; and two counts of counterfeiting as class D felonies in 2014. The PSI also listed pending charges of residential entry as a level 6 felony and criminal mischief as a class B misdemeanor in Marion County under cause number 49G04-1707-F6-27563 ("Cause No. 63"). At the sentencing hearing, Nelson pled guilty to residential entry as a level 6 felony

related to events on July 23, 2017, under Cause No. 63, the State dismissed the remaining count, and the court ordered the sentence under Cause No. 63 be served concurrently with the sentence under the present case. The PSI summarizes Nelson's adult history as including twenty-seven arrests resulting in nine misdemeanor convictions and nine felony convictions. Nelson had his probation revoked multiple times. The PSI states that the DOC records indicate forty-five incidents including fighting and disorderly conduct.

[17] The PSI further indicates Nelson first consumed alcoholic beverages at the age of sixteen, used marijuana prior to his incarceration whenever he had the money or was around someone who had it, and used cocaine in the amount of one-half ounce a week prior to his arrest. The PSI states that, regarding any substance abuse treatment, he "replied, 'just last year when I was in CCA,'" but it also states that he claimed he never sought substance abuse treatment. *Id.* at 104. The PSI indicates that he has a fifteen-year-old daughter who lives with her mother in Anderson and a one-year-old daughter who lives in foster care. He advised that he was not ordered to pay child support for his children. The PSI indicates that his overall risk assessment score places him in the very high risk to reoffend category.

[18] After due consideration and in light of his lengthy criminal history, we conclude that Nelson has not sustained his burden of establishing that his

aggregate sentence is inappropriate in light of the nature of the offenses and his character.[2]

[19] For the foregoing reasons, we affirm Nelson's sentence.

[20] Affirmed.

Altice, J., and Tavitas, J., concur.

---

[2] To the extent Nelson argues the court abused its discretion by finding that he violated the conditions of pretrial release as an aggravator, we need not address this issue because we find that his sentence is not inappropriate under Ind. Appellate Rule 7(B). *See Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007) (holding that, in the absence of a proper sentencing order, Indiana appellate courts may either remand for resentencing or exercise their authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), *reh'g denied*; *Shelby v. State*, 986 N.E.2d 345, 370 (Ind. Ct. App. 2013) (holding that "even if the trial court did abuse its discretion by failing to consider the alleged mitigating factor of residual doubt, this does not require remand for resentencing"), *trans. denied*; *Chappell v. State*, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012) (holding that any error in sentencing is harmless if the sentence imposed is not inappropriate), *trans. denied*; *Mendoza v. State*, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) (citing *Windhorst* and holding that, "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate"), *trans. denied*.