# FOR PUBLICATION

FILED
Mar 29 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court



ATTORNEYS FOR APPELLANT:

**DAVID M. JORDAN**
**J. CLAYTON MILLER**
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| SHAMIR CHAPPELL, )<br>)<br>    Appellant-Defendant, )<br>)<br>      vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>    Appellee-Plaintiff. ) | No. 89A01-1106-CR-265 |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1012-FA-009

**March 29, 2012**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Shamir Chappell ("Chappell") was convicted in Wayne Superior Court of Class A felony burglary causing bodily injury, Class B felony burglary of a dwelling, Class D felony battery, and he admitted to being an habitual offender. Chappell appeals and presents five issues, which we renumber restate as the following two: (1) whether the State presented sufficient evidence to support Chappell's convictions for burglary, and (2) whether the trial court erred in sentencing Chappell to an aggregate term of seventy years. We conclude that the State presented sufficient evidence to support Chappell's conviction of Class A felony burglary, and that the trial court did not err in imposing sentence, but we determine *sua sponte* that his convictions for both Class A felony burglary and Class B felony burglary constitute double jeopardy. We therefore affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

In 2010, Elly Casebolt-Flanagan ("Casebolt-Flanagan") rented a home in Richmond, Indiana to Dinashia Bee ("Bee"). Bee and Casebolt-Flanagan had an "understanding" that only Bee was to live at the home. Despite this, Bee lived at the home with her mother and two brothers. One of Bee's brothers, Maurice Jones ("Maurice") lived at the home with his wife, Heather Jones ("Heather"). Casebolt-Flanagan was unhappy with this and legally evicted Bee from the home on September 8, 2010. As a result of the eviction, Bee was given until September 13, 2010 to vacate the house and take her belongings. Although Bee and her mother moved out of state, Maurice and Heather stayed at the house on September 12, 2010 in order to remove the remainder of Bee's belongings.

That evening, Maurice went to the home of Carlotta Wilkerson ("Wilkerson"), with whom he had a relationship. Wilkerson began to send Heather text messages, taunting her that Maurice was going to leave her to be with Wilkerson. Wilkerson even called Heather and threatened to physically assault her. Undaunted by these threats, Heather went to Wilkerson's home to confront her. The two women argued, but Maurice was able to keep them physically separated. Maurice then went back to the rented home with Heather, and the two slept in the back bedroom of the house.

At some point in the middle of that night, Maurice and Heather heard someone banging on the front door. Heather got out of the bedroom to see what was causing the noise when she saw the door fly open and Wilkerson and Chappell enter the house. Heather then ran back to the bedroom and shut the door. Wilkerson and Chappell tried to force their way into the bedroom, but Maurice and Heather held the door shut. Chappell then kicked the door repeatedly, eventually breaking it off the latch and hinges. Wilkerson was holding a steak knife, so Heather attempted to flee out the front door but was blocked by an unknown individual. Heather then ran to the basement in an attempt to flee out a back door, but Wilkerson followed her.

In the basement, Wilkerson stabbed Heather in the arm. Maurice and Chappell soon came to the basement, and Chappell blocked Heather's attempt to run back up the basement stairs. When Maurice attempted to come to Heather's defense, Wilkerson told Chappel, "we're in this together, do it," and "what are you waiting for?" Tr. pp. 302, 245. Chappell then swung his fists at Maurice. Heather managed to escape back up the basement stairs, but as she did, Wilkerson stabbed her again, this time in the hip. Heather

3

was then able to run out the front door and found shelter at a neighbor's house, where the neighbor called the police. Maurice too ran to the front door. As he did, Chappell ran by him, telling Wilkerson, "come on, we gotta go." Tr. p. 319. Wilkerson and Chappell left the house, and Wilkerson slashed the tires on Maurice's car. Maurice went back into the house and also called the police.

When the police arrived, the found they front door of the house dented and completely removed from the door frame. Heather was taken to the hospital, and it took eight medical staples to close her knife wounds. Both Maurice and Heather later identified Wilkerson and Chappell from a photographic array as their attackers. Both were "100%" positive of the accuracy of their identifications. Tr. pp. 182-83, 255

On December 7, 2010, the State charged Chappell as follows: Count I, aiding, inducing, or causing Class A felony burglary resulting in bodily injury; Count II, aiding, inducing, or causing Class B felony burglary of a dwelling; and Count III, Class B misdemeanor battery. The State also alleged that Chappell was an habitual offender. The State later moved to add Count IV, Class C felony battery, and moved later again to amend this charge to aiding, inducing, or causing Class C felony battery. At that time, the State also added Count V, which alleged Class D felony residential entry. A two-day jury trial commenced on February 7, 2011. At the conclusion of the trial, the jury found Chappell guilty on Counts I, II, IV, and V, but acquitted him on Count III. Chappell then admitted to being an habitual offender.

On March 4, 2011, the trial court sentenced Chappell to forty years on Count I, ten years on Count II, and four years on Count IV. The trial court vacated the conviction on

4

Count V on double jeopardy grounds. The court also attached an habitual offender enhancement of thirty years to the forty-year sentence on Count I, and ordered the sentences on the other counts to run concurrently with Count I. Thus, Chappell was sentenced to an aggregate of seventy years incarceration.

Chappell filed a motion to correct error on March 29, 2011. The trial court held hearings on Chappell's motion on April 15 and May 11, 2011.[1] On June 21, 2011, the trial court entered an order denying Chappell's motion to correct error, and Chappell filed a notice of appeal that same day.[2]

## I. Sufficiency of the Evidence

Chappell first argues that the State failed to present sufficient evidence to support his convictions for burglary. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting

---

[1] Pursuant to Indiana Trial Rule 53.3(A), if the trial court fails to rule on a motion to correct error within thirty days after the hearing on the motion, the motion is deemed denied. Here, because the trial court held two hearings on Chappell's motion to correct error, we find this case distinguishable from Paulsen v. Malone, 880 N.E.2d 312 (2008). In that case, the trial court asked Malone to provide additional authorities after the hearing on the motion to correct error. Malone therefore argued that the thirty-day period that the trial court had to rule on the motion did not begin to run until both parties had submitted their additional authority to the trial court. We disagreed and held that the thirty-day time period began to run at the conclusion of the hearing itself, and not at some later date. "Nothing in the language of the rule suggests that the matter is still being 'heard' after the hearing terminates and while supplemental authority is being offered." Id. at 315. In contrast, here the motion to correct error *was* still being heard at the second hearing, and the thirty-day time period began to run at the conclusion of this second hearing.

[2] The trial court's last hearing on Chappell's motion was held on May 11, 2011, but the trial court did not issue its order denying Chappell's motion until June 21, 2011, which is forty-one days after the hearing. Thus, by operation of Trial Rule 53.3(A), Chappell's motion was deemed denied on June 10, 2011. Fortunately for Chappell, his notice of appeal was timely filed on June 21, 2011, only eleven days after his motion to correct error was deemed denied. See Ind. Appellate Rule 9(A)(1) (providing that if a party files a timely motion to correct error, the notice of appeal must be filed within thirty days after the court's ruling on such motion or thirty days after the motion is deemed denied, whichever occurs first).

evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

A. *Building or Structure of Another Person*

To convict a defendant of Class A felony burglary, the State must prove that he: (1) broke and entered the building or structure of another; (2) with the intent to commit a felony in it; and (3) it resulted in bodily injury to any person other than a defendant.[3] See Ind. Code § 35-43-2-1(2)(A) (2004). Chappell's main argument is that he cannot be guilty of burglary because no person had legal possession of the house he broke into and entered. Chappell is correct that "possession rather than ownership is the essential element in burglary." Butler v. State, 478 N.E.2d 126, 130 (Ind. Ct. App. 1985). But we disagree with Chappell that no one had possession of the house at the time of the break-in.

In Count I of the charging information, the State alleged that the structure Chappell broke into was "the building or structure of another person . . . owned by Elly Casebolt-Flanagan and rented by Dinashia [B]ee[.]" Appellant's App. p. 12. And the evidence supported this allegation. Maurice's sister, Bee, was the tenant of the house and did not have to vacate the premises until September 13, 2010. It was in the early hours of that day that Chappell broke into the home. And Maurice and Heather had Bee's

---

[3] Because Chappell was charged under a theory of accomplice liability, the State was also required to prove that he aided, induced, or caused Wilkerson to commit burglary.

permission, if not the landlord's permission, to be in the house at the time Chappell and Wilkerson broke into it. Bee still had the right to be in the home at the time of the burglary, and Maurice and Heather were in the home with her permission. In contrast, neither Wilkerson not Chappell had such permission.

We therefore conclude that the State presented evidence sufficient to prove that Chappell broke and entered into the building or structure of another person. See Jewell v. State, 672 N.E.2d 417, 426 (Ind. Ct. App. 1996) (burglary statute's requirement that the dwelling be that "of another person" is satisfied if the evidence demonstrates that the entry was unauthorized); Keel v. State, 165 Ind. App. 579, 582-83, 333 N.E.2d 328, 330 (1975) (concluding that evidence was sufficient to support defendant's conviction for burglary where defendant broke into home owned by recently deceased woman but still occupied by decedent's male friend for a week after her death, despite defendant's claim that occupant was unlawfully living there after owner's death).

B. *Accomplice Liability*

The State charged Chappell under a theory of accomplice liability by alleging that he aided, induced, or caused Wilkerson to break and enter into the home with the intent to commit battery with a deadly weapon and that the burglary resulted in bodily injury to Heather. See Appellant's App. p. 12. Chappell claims that the State failed to prove that he knew that Wilkerson intended to stab Heather. Noting that neither he nor Wilkerson testified, Chappell claims that there was therefore no evidence to show that he knew that Wilkerson was armed or that he knew she intended to attack Heather when the two broke into the home. Neither the law nor the facts support Chappell's argument.

7

To meet its burden under a theory of accomplice liability, the State was required to prove that Chappell aided, induced, or caused burglary and that when he so acted, he was aware of a high probability that his behavior was aiding, inducing, or causing burglary. See Johnson v. State, 605 N.E.2d 762, 764 (Ind. Ct. App. 1992), trans. denied (citing Ind. Code § 35-41-2-4). "The culpability element involves proof of an awareness of a high probability both that [the defendant] was engaging in the *actus reus* of the crime, namely aiding, inducing or causing burglary, and that [his] behavior would facilitate the commission of a breaking and entering with the intent to commit one of the particularly named felonies." Id. at 764-65 (citing Ind. Code § 35-41-2-2(d); Fortson v. State, 270 Ind. 289, 385 N.E.2d 429, 434 (1979)). The State was *not* required to prove that Chappell knew his conduct would necessarily result in battery with a deadly weapon. See id. at 765. Instead, the accessory statute has been construed to impose a form of vicarious liability "'for everything . . . which follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not intended as part of the original design or common plan,' upon a showing that the accomplice acted in concert with those who physically committed the elements of the crime." Id. (quoting Fox v. State, 497 N.E.2d 221, 227 (Ind. 1986)).

Moreover, despite the fact that neither Wilkerson nor Chappell testified, there was sufficient circumstantial evidence from which the jury could conclude that Chappell knew of Wilkerson's plan to attack Chappell. With regard to burglary, intent to commit a given felony may be inferred from the circumstances, but intent to commit a felony may not be inferred from proof of breaking and entering alone. Freshwater v. State, 853

8

N.E.2d 941, 943 (Ind. 2006). Some fact in evidence must point to an intent to commit a specific felony. Id. Generally, the defendant's intent at the time of entry may be inferred from the fact of subsequent commission of a felony. Mull v. State, 770 N.E.2d 308, 313 (Ind. 2002) (citing Gee v. State, 526 N.E.2d 1152, 1154 (Ind. 1988)); see also Jewell, 672 N.E.2d at 427 ("Although the fact of breaking and entering is not itself sufficient to prove the entry was made with the intent to commit the felony, such intent may be inferred from the subsequent conduct of the defendant inside the premises.").

Chappell and Wilkerson broke into the house and went to the door of the bedroom where Heather and Maurice were sleeping. Chappell then helped Wilkerson knock the bedroom door down. And when Wilkerson chased Heather to the basement and stabbed her in the arm, Chappell blocked her escape. During the attack, Wilkerson told Chappell, "we're in this together, do it," and "what are you waiting for?" Tr. pp. 302, 245. Chappell then attempted to hit Maurice. From these facts and circumstances, the jury could reasonably infer that Chappell knew that Wilkerson intended to attack Heather with a knife when they broke and entered the home where Maurice and Heather were staying.

C. *Dwelling*

Chappell also claims that the State presented insufficient evidence to support his conviction for Class B felony burglary, arguing that the State failed to prove that the house was a "dwelling" as required to elevate the crime of burglary to a Class B felony. See Ind. Code § 35-43-2-1(1)(B)(i) (2004). Chappell's argument is again based on his claim that Maurice and Heather were not legally in possession of the home and that the

9

home was therefore not a dwelling. We have rejected this argument above. Thus, there was sufficient evidence to support Chappell's convictions.

## II. Double Jeopardy

We conclude *sua sponte*, however, that Chappell's convictions for Class B felony burglary and Class A felony burglary of the same house constitute impermissible double jeopardy, requiring vacation of his conviction for Class B felony burglary. Chappell was convicted of both Class A felony burglary and Class B felony burglary for one act of breaking and entering into one house. To convict Chappell of Class A felony burglary, the State was required to prove that he: (1) broke and entered the building or structure of another; (2) with the intent to commit a felony in it; and (3) it resulted in bodily injury to any person other than a defendant. See I.C. § 35-43-2-1(2)(A). To convict Chappell of Class B felony burglary, the State had to prove that he: (1) broke and entered the building or structure of another; (2) with the intent to commit a felony in it; and (3) that the building or structure was a dwelling. See I.C. § 35-43-2-1(1)(B)(i).

Under the Richardson actual evidence test, conviction for two offenses may constitute double jeopardy if the defendant demonstrates a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of the second offense. Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008) (citing Richardson v. State, 717 N.E.2d 32, 53 (Ind. 1999)).[4] Our supreme court has explained that the actual evidence test is not simply

---

[4] Because each conviction required proof of an additional element that was not required by the other, Chappell's convictions do not constitute double jeopardy under either the federal Blockburger test or

10

whether the evidentiary facts used to establish *one* of the essential elements of the first offense may also have been used to establish *one* of the essential elements of the second offense. Id. (citing Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002)). Under the actual evidence test, if the evidentiary facts establishing any one or more elements of one of the challenged offenses establishes the all essential elements of the second challenged offense, double jeopardy considerations prohibit multiple convictions. Alexander v. State, 768 N.E.2d 971, 973 (Ind. Ct. App. 2002), aff'd on reh'g, 772 N.E.2d 476, trans. denied. It is not required that the evidentiary facts establishing *all* of the elements of the one challenged offense also establish *all* of the essential elements of a second challenged offense, and both of the offenses being analyzed for double jeopardy purposes must be viewed in the context of the other offense. Id.

Applying this test to the facts of the case before us, we conclude that Chappell's convictions for both Class A felony burglary and Class B felony burglary constitute impermissible double jeopardy. To establish that Chappell committed Class B felony burglary, the State had to prove that the structure broken and entered into was a dwelling. But the only evidence that established that the home was a dwelling also established that it was a building or structure, which was required to convict Chappell of Class A felony burglary. That is, the only actual evidence differentiating the two convictions was the

---

Indiana's Richardson statutory elements test. See Jewell v. State, 957 N.E.2d 625, 631 n.10 (Ind. 2011) (noting that Blockburger test requires examination of whether each statutory offense requires proof of a fact which the other does not) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)); Pontius v. State, 930 N.E.2d 1212, 1218 (Ind. Ct. App. 2010), trans. denied (noting that convictions for two offenses constitute double jeopardy under the Richardson statutory elements test if the statutory elements of one challenged offense also establish the statutory elements of another offense); Brown v. State, 912 N.E.2d 881, 896 (Ind. Ct. App. 2009), trans. denied (observing that Richardson statutory elements test is essentially the same as the Blockburger test).

11

element of bodily injury to Heather, which was required to establish the Class A felony conviction. Thus, *some* of the evidentiary facts establishing the elements of Class A felony burglary (that Chappell helped Wilkerson break into the home and that Wilkerson intended to battery Heather) also established *all* of the essential elements of the Class B felony burglary. This constitutes impermissible double jeopardy.[5] See Alexander, 768 N.E.2d at 973.

Because Chappell's convictions for both Class A felony burglary and Class B felony burglary are impermissible, we vacate Chappell's conviction for Class B felony burglary and remand with instructions that the trial court vacate Chappell's sentence thereon.[6]

### III. Sentencing

Chappell also claims that the trial court erred in sentencing him. Although Chappell frames his claim of sentencing error as one of abuse of discretion, his actual argument is that his sentence is inappropriate in light of the nature of the offense and the

---

[5] In addition to the instances covered by Richardson, our courts have "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in Richardson." Guyton v. State, 771 N.E.2d 1141, 1143 (Ind. 2002). Prohibited under this series of rules is "[c]onviction and punishment for a crime which consists of *the very same act* as another crime for which the defendant has been convicted and punished." Id. (giving the example of a battery conviction vacated because the information showed that the identical touching was the basis of a second battery conviction). Chappell's conviction for Class B felony burglary would also appear to be impermissible under this test because it is based on the very same act, breaking and entering the home with the intent to commit a felony, as the Class A felony burglary conviction.

[6] Because the trial court ordered Chappell's ten-year sentence on the Class B felony burglary conviction to run concurrently with the seventy-year enhanced sentence imposed on the Class A felony burglary conviction, Chappell's aggregate sentence will be unaffected.

character of the offender.[7]  Pursuant to Indiana Appellate Rule 7(B) (2009), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case."  Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).  It is on the basis of Appellate Rule 7(B) alone that a criminal defendant may now challenge his sentence "where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence that is supported by the record, and the reasons are not improper as a matter of law, but has imposed a sentence with which the defendant takes issue."  Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218.  It is the defendant's

---

[7]  In arguing that his sentence is inappropriate, Chappell briefly argues that his sentence "would appear to offend the Proportionality Clause of the Indiana Constitution," Appellant's Br. at 15, and claims that his sentence is higher than the maximum penalty for murder, which is sixty-five years.  Chappell fails to fully develop this argument, and we therefore consider it waived.  See Smith v. State, 822 N.E.2d 193, 202–03 (Ind. Ct. App. 2005) (the failure to develop a cogent argument results in waiver of the issue on appeal), trans. denied; Ind. Appellate Rule 46(A)(8)(a).  Waiver notwithstanding, Chappell's argument overlooks the fact that his sentence was enhanced pursuant to the habitual offender statute.  If a murder conviction were enhanced by the habitual offender statute, the maximum sentence would be ninety-five years.  Furthermore, our supreme court has explained that the proportionality analysis of an habitual offender penalty has two components: (1) a reviewing court should make an inquiry into the "nature" and gravity of the present felony; and (2) a reviewing court should consider the "nature" of the predicate felonies upon which the habitual offender sentence is based.  Clark v. State, 561 N.E.2d 759, 766 (Ind. 1990).  As discussed *infra*, the nature of Chappell's present offense and his prior offenses support the trial court's decision to impose a seventy-year sentence.

13

burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. Id. at 494.

The sentencing range for a Class A felony is twenty to fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4 (2004). Here, the trial court sentenced Chappell to forty years for the Class A felony burglary conviction. In addition, the sentences on Chappell's accompanying convictions were ordered to run concurrently. However, the trial court also imposed a habitual offender enhancement of thirty years to this sentence.[8] Chappell was facing a potential sentence of up to eighty years had the trial court chosen to impose the fifty-year maximum sentence for a Class A felony in addition to the habitual offender enhancement. And Chappell was also facing an additional eight years on the Class C felony battery conviction, but the trial court instead imposed the four-year advisory sentence and ordered it to run concurrently with sentence on the Class A felony burglary conviction. In total, Chappell faced a potential sentence of eighty-eight years. The trial court sentenced him to seventy years. With this in mind, we address Chappell's claim that his sentence is inappropriate.

Despite Chappell's attempts to minimize the nature of the offenses, we think the nature of his crimes supports the trial court's sentencing judgment. Chappell was an active participant in a violent home invasion. Chappell helped Wilkerson break into a home not merely for pecuniary gain, but to allow Wilkerson to attack Heather with a

---

[8] The habitual offender enhancement must be at least as long as the advisory sentence for the crime to which the enhancement is applied but is capped at thirty years. Ind. Code § 35-50-2-8(h) (2004). Thus, if an habitual offender enhancement is imposed on a sentence for a Class A felony, thirty years is both the minimum enhancement (being the advisory sentence for a Class A felony) and the maximum enhancement (being the maximum allowable under the habitual offender statute).

14

knife. After breaking in the front door, Chappell and Wilkerson broke down the door to the bedroom while Maurice and Heather attempted to hold it shut. And when Heather fled to the basement and was stabbed by Wilkerson, Chappell prevented Heather from escaping. And Chappell attempted to strike Maurice during the burglary. Fortunately, Heather was able to escape Wilkerson despite Chappell's attempt to prevent her from fleeing. As a result of Wilkerson's attack, which Chappell facilitated, Heather was stabbed in the hip and the arm and required several medical staples to close her wounds.

Chappell's character, as reflected by his extensive criminal history, also supports the trial court's sentencing decision. Chappell, who was thirty-six years old at the time of sentencing, had already amassed fourteen criminal convictions, including four felony convictions. One of his prior convictions was for attempted "breaking and entering with intent" in Michigan. Appellant's App. p. 122. He was also convicted in Michigan for first degree felony home invasion and assault with a weapon, and he was convicted twice for trespass.

We have often noted that the significance of a defendant's criminal history varies based on the gravity, nature, and number of prior offenses as they relate to the current offense. Caraway v. State, 959 N.E.2d 847, 851 (Ind. Ct. App. 2011); see also Wooley v. State, 716 N.E.2d 919, 929 n.4 (Ind. 1999) (noting that a prior conviction for OWI would be a significant aggravator in a subsequent alcohol-related offense); Simmons v. State, 962 N.E.2d 86, 93 (Ind. Ct. App. 2011) (noting that prior OWI convictions, as they related to present offense of OWI, reflected poorly on defendant's character and justified imposition of maximum eight-year sentence). Chappell's prior convictions involving

15

breaking and entering and trespass, as they relate to his current conviction for burglary, do not reflect well on his character.

Chappell has also been given the grace of probation in the past, only to have his probation revoked. In fact, the pre-sentence investigation report indicates that Chappell's probation had been revoked three times.[9] And since his move to Indiana, Chappell has been arrested a total of eighteen times. Although a record of arrests, without more, does not establish the "historical fact" that a defendant committed a criminal offense, a record of arrests, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State and may be relevant to the assessment of the defendant's character. Cotto v. State, 829 N.E.2d 520, 526 (Ind. 2005). Chappell also admitted to being in arrears on his child support. All of this reflects poorly on Chappell's character.

Giving due consideration to the trial court's sentencing decision, and considering the nature of the offense and the character of the offender, we cannot conclude that Chappell's seventy-year sentence is inappropriate.[10]

---

[9] The pre-sentence investigation report also indicates that there was an active warrant for Chappell relating to a parole violation in Michigan. Although Michigan did not extradite Chappell, the warrant appears to still be active. See Appellant's App. p. 124.

[10] Chappell also briefly claims that he pleaded guilty to being an habitual offender and that the trial court erred in failing to consider this as a mitigating factor. But even if the trial court did err in this regard, any error in sentencing is harmless if the sentence is not inappropriate. See Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (noting that when trial court errs in sentencing defendant, court on appeal may exercise authority to review and revise sentence, instead of remanding for resentencing); Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) (noting that even if trial court abuses its discretion in sentencing, we will not remand for resentencing if the sentence imposed is not inappropriate), trans. denied. As we have determined that Chappell's sentence is not inappropriate, any sentencing error is harmless.

**Conclusion**

The State presented sufficient evidence to support Chappell's conviction for Class A felony burglary. Chappell's conviction and sentence on Class B felony burglary constitutes impermissible double jeopardy, and we vacate his conviction for Class B felony burglary and remand with instructions to vacate the sentence thereon. Lastly, Chappell's aggregate sentence of seventy years is not inappropriate.

Affirmed in part, reversed in part, and remanded with instructions.

FRIEDLANDER, J., and RILEY, J., concur.