Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**MICHAEL G. MOORE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN ANTHONY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1312-CR-1033 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Hooper, Judge
Cause No. 49F18-1207-FD-051278

**August 11, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

John Anthony ("Anthony") was convicted in Marion Superior Court of Class A misdemeanor criminal mischief. Anthony appeals and challenges the sufficiency of the evidence supporting the conviction.

We affirm.

**Facts and Procedural History**

In the summer of 2012, Dion Staten ("Staten") operated Mighty Motors II, a used car lot located on East 10th Street in Indianapolis. Staten had opened the shop as an extension of the Mighty Motors car lot located in Franklin, Indiana, which was owned by his brother, Dean Griffin ("Griffin"). At Mighty Motors II, Staten purchased cars, repaired them, and resold them on the lot. Although Staten and his brother, Griffin, worked together on the Mighty Motors businesses, the operation of Mighty Motors II was predominantly conducted by Staten. Mighty Motors II shared its lot with Tire Shop, a tire store owned by Staten's cousin, Rick Moorman ("Rick"), and Rick's wife, Tracy. All in all, the businesses were family affairs.

On the afternoon of July 26, 2012, Staten arrived at Mighty Motors II and discovered that several cars on the lot had slashed tires. The lot was monitored by a video surveillance system, and with some assistance from Rick and Tracy from Tire Shop, Staten was able to access the record from the day before.

The surveillance video showed an elderly white male with grey hair and glasses entering the lot in a silver Saturn sedan around 4:45 p.m., stabbing the tires of several cars, and then leaving the lot around 4:50 p.m. Although Staten did not recognize the man in the video, after viewing the surveillance video, Rick gave Anthony's phone number to Staten. Anthony was a customer who, the week before, had given Tire Shop a $20 deposit toward the repair of his power window. Staten called the number, posing as a Tire Shop employee, and left a message requesting that Anthony come to Tire Shop to have his window motor repaired. Anthony arrived

2

at the shop in a silver Saturn sedan and Staten, Tracy, and Rick all recognized him as the individual from the surveillance video. Immediately after the three identified Anthony, Staten closed and locked the metal gate to the lot so that Anthony could not leave and called the police. IMPD officers Lavish and Bohan came to the scene, watched the footage from the surveillance system, and took Anthony into custody. Staten later discovered that Anthony had also cut the cloth roof of a convertible on the lot.

Anthony was charged with a Class D felony criminal mischief. A jury trial was held on October 3, 2013. After the State's case in chief, the trial court found that the State failed to meet its burden of proving that the damages equaled two thousand five hundred dollars ($2,500), the amount required by statute to prove a Class D felony. The jury convicted Anthony of the lesser-included charge of Class A misdemeanor criminal mischief. Anthony was sentenced to 365 days of probation.

**Standard of Review**

When the sufficiency of evidence is challenged, we neither reweigh the evidence nor judge the credibility of witnesses. Chappell v. State, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005)), trans. denied. Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

**Discussion and Decision**

To convict Anthony of criminal mischief, the State was required to prove that he "recklessly, knowingly, or intentionally damage[d] or deface[d] property of another person without the other person's consent." Ind. Code § 35-43-1-2(a)(1)(A) (2007) (amended July 1, 2014); see also Appellant's App. p. 18. In the charging information, the State named Mighty Motors II as the owner of the damaged property. Appellant's Br. p. 4. Anthony contends that the State did not present sufficient evidence to prove that the cars belonged to Mighty Motors II and that the cars were damaged without the consent of Mighty Motors II. Appellant's Br. p. 3.

Specifically, Anthony argues that Staten, the State's witness, cannot testify to these required elements because the evidence did not establish him to be the owner or agent of Mighty Motors II. Appellant's Br. p. 3-4. Additionally, Anthony argues that Staten was not an agent of Mighty Motors II because Griffin, the owner of Mighty Motors and Mighty Motors II, did not exert any control over Staten. Appellant's Br. p. 5; see Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 814 (Ind. 2002) (requiring the agent to be subject to the principal's control for agency to exist).

The facts most favorable to the jury's verdict show that Staten was the owner, or at least an agent, of Mighty Motors II. Staten testified that he purchased the cars, repaired the cars, negotiated the prices for the cars, and sold the cars on the Mighty Motors II lot. Tr. pp. 73-74, 108-09. Staten was responsible for the day to day operations of Mighty Motors II. Tr. p. 74. Although Staten had only "processed" one car through Mighty Motors II at the time of trial, he had purchased fifteen to twenty cars for the lot. Tr. pp. 108-09. Additionally, Tracy testified that Staten was the owner of Mighty Motors II and that Staten operated the business himself. Tr. pp. 130-31. Although Griffin owned the original Mighty Motors car lot, he rarely visited Mighty Motors II. Tr. pp. 74, 131.

4

Although portions of Staten's testimony concerning his ownership of Mighty Motors II and its relationship to Mighty Motors were unclear, the jury could draw a reasonable inference from the testimony of all of the State's witnesses that Staten was the owner of Mighty Motors II, or, at a minimum, an agent of Mighty Motors II. As we neither reweigh the evidence nor reevaluate the credibility of witnesses, we defer to the jury's determination as to Staten's authority. See Chappell, 966 N.E.2d at 129.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.