## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 27 2016, 8:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer D. Wilson Reagan
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Philip P. Fletcher, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | May 27, 2016 <br><br> Court of Appeals Case No. 41A01-1509-CR-1362 <br><br> Appeal from the Johnson Superior Court <br><br> The Honorable Lance D. Hamner <br><br> Trial Court Cause No. 41D03-1308-FC-00075 |

**Mathias, Judge.**

[1] Philip Fletcher ("Fletcher") was convicted in Johnson Superior Court for Class D Felony attempted theft. Fletcher appeals and argues that his conviction is not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] On January 26, 2012, Kelley Leach ("Leach") returned to her home after work and found that someone had broken into her house. Tr. p. 15. Upon entering her house, Leach discovered a camouflage ski mask on the floor that did not belong to her. *Id.* at 16. Also, her bedroom "was pretty torn up and things were in disarray." *Id.* Alarmed, Leach called the police. *Id.*

[4] Officer Renee Elliot ("Officer Elliot") of the Greenwood Police Department arrived shortly thereafter. *Id.* at 17. She discovered that several items were taken out of Leach's jewelry box. *Id.* at 31. Officer Elliot observed a tire iron on Leach's dining room table about five or six feet away from the ski mask. *Id.* at 18. The tire iron belonged to Leach, but she had not placed it on the dining room table. She kept the tire iron in the back of her 1997 Ford Explorer. *Id.* at 18–19.

[5] Leach then checked the trunk of her Explorer, which was parked in a barn on her property. *Id.* The Explorer's back tailgate was unlatched. *Id.* at 19. When Leach opened the back, she noticed that a blanket was gone and that items she left on the back seat were now on the vehicle's floor. *Id.* at 21. Leach testified at trial that she had the only set of keys for the truck and that no one else had driven the truck near the time of the crime. *Id.* at 176, 178.

[6] Leach went back into the house to tell Officer Elliot that someone broke into her truck. *Id.* at 23. Then, Leach and Officer Elliot returned to the barn to further inspect the truck. *Id.* They found that the steering column had been broken open, the ignition was broken, and the car battery was dead. *Id.* at 23–24. Notably, the Explorer was in "full working condition" before Leach left for work that morning. *Id.* Leach and Officer Elliot also found a long, metal, silver rod lying on the passenger seat that did not belong to Leach. *Id.* at 24–25. Officer Elliot took photos of the home and the Explorer and recorded Leach's statement. *Id.* at 19, 25–26.

[7] On January 30, 2012, Detective Jay Arnold ("Detective Arnold") called Leach to follow-up on the January 26th incident. *Id.* at 47. After asking Leach if she had any new evidence to report, she replied that she found dried blood on the Explorer's dashboard. *Id.* at 48. Leach reported that no one had been in the truck since she and Officer Elliot inspected it a few days prior and that the blood was not there the last time she drove the car. *Id.* at 26, 177. Further, Leach stated that the Explorer was in the same condition as when Officer Elliot inspected it. *Id.* at 26–27.

[8] Detective Arnold and a Greenwood Police Department Evidence Technician, Eric Lowe ("Lowe"), went to Leach's house to further inspect the scene. *Id.* at 48–49. Detective Arnold identified a dry spot of blood on the steering column next to the ignition, although he could not tell how long the blood had been there. *Id.* at 49, 82. Lowe collected a sample of the blood. Along with hairs from the ski mask, the blood was submitted for DNA analysis. *Id.* at 51, 181.

[9]     After running searches for a DNA match for almost a year, the DNA lab received a Combined DNA Index System (CODIS) hit that matched the blood swab to Fletcher's DNA profile. *Id.* at 53. Along with the match, the hit provided Detective Arnold with Fletcher's Department of Correction ("DOC") number. *Id.* Using that number, Detective Arnold determined that Fletcher was incarcerated in the Edinburgh Correctional Facility for one or more crimes unrelated to the instant case. *Id.* at 55–56. To confirm the CODIS hit, Detective Arnold executed a search warrant and collected Fletcher's DNA using a cotton cheek swab. *Id.* at 56, 61–62.

[10]    When Detective Arnold returned to the Greenwood Police Department, he transferred Fletcher's DNA sample into an evidence locker. *Id.* at 63. The sample was transferred to the Indiana State Police Lab on June 7, 2013, for analysis. *Id.* at 63, 94. On June 28, 2013, Detective Arnold received a report stating that Fletcher's DNA sample matched the blood sample from Leach's truck and the hairs from the ski mask. *See id.* at 63– 64, 67, 128. The report stated that Fletcher was the source of the DNA in both samples "to a reasonable degree of scientific certainty." *Id.* at 128.

[11]    Fletcher was arrested and charged with Class C felony burglary on August 7, 2013. *Id.* at 65, 68; Appellant's App. p. 3. The State filed its Motion to Amend the Information on April 27, 2015, which substituted an attempted theft charge for the burglary charge. Appellant's App. p. 33. A bench trial was held that same day. *Id.* at 6. At the bench trial, Fletcher was convicted of Class D felony attempted theft. At the sentencing hearing on August 20, 2015, Fletcher was

sentenced to 730 days in the Indiana Department of Correction with one day of jail credit time, 180 days suspended to probation, $250.00 in restitution, and $183.00 in court costs.

[12] Fletcher now appeals, claiming that the State produced insufficient evidence to support his conviction. Specifically, Fletcher points to the following: his blood was not found in the Explorer until a few days after the initial investigation; he has an alternative explanation for why his blood was in Leach's truck; the police did not investigate all discovered DNA profiles; and the DNA was not refrigerated in the Greenwood Police Department. *Id.* at 10, 12.

### Standard of Review

[13] When a party challenges the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans denied.* Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

## Discussion and Decision

[14] To convict Fletcher of theft, the State was required to prove that he "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use." Ind. Code § 35-43-4-2(a). To find that Fletcher attempted to commit theft, the State was required to that he engaged in "conduct that constitutes a substantial step toward commission of the crime" and that he "act[ed] with the culpability required for the commission of the crime." I.C. § 35-41-5-1(a).

[15] Fletcher argues that the evidence is insufficient to support his conviction because the State could not show how long the blood stain had been on the dashboard. Fletcher argues that his blood got onto the dashboard before January 26, 2012. *Id.* at 12. A few days before January 26, 2012, Fletcher states that he helped a man driving Leach's truck fix the broken ignition switch, and that his blood must have gotten on the dashboard at this time. *Id.* Fletcher also notes that the police only investigated him, even though two other DNA profiles matched the blood from the crime scene. *Id.* at 12.

[16] At trial, the State presented evidence that someone tried to steal Leach's truck; items within the car were displaced, the car battery was dead, and the steering column was broken open. Second, the State presented evidence that Fletcher's DNA profile matched the blood stain found in the truck. Leach testified at trial that the blood stain was not there before the incident, that she had the sole set of keys, and that no one else had driven the truck around January 26, 2012.

This evidence supports Fletcher's attempted theft conviction, and Fletcher's arguments are simply a request to reweigh the evidence, which is outside this court's province. *See Chappell*, 966 N.E.2d at 129. For all of these reasons, we conclude the evidence was sufficient to convict Fletcher of Class D felony attempted theft.

Affirmed.

Kirsch, J., and Brown, J., concur.