## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 25 2018, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Harold W. Jackson,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

October 25, 2018

Court of Appeals Case No.
18A-CR-1556

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-1709-F3-53

**Brown, Judge.**

[1] Harold W. Jackson appeals his sentence for robbery as a level 3 felony. We affirm.

## Facts and Procedural History

[2] On September 20, 2017, Jackson entered a Family Dollar store in Allen County wearing black clothing and a black mask on his face, displayed a "CO2 powered Airsoft gun" which appeared to be a Colt firearm, and said "[t]his is a hold-up . . . give me all your money." Transcript Volume 2 at 7, 64. The store manager was near a safe where she had retrieved a bundle of fifty one-dollar bills for a cashier. Jackson walked towards the manager and cashier, pointed the gun at the manager's head, and "kept yelling for the money." *Id.* at 12. The manager was "[s]cared, like [she] was gonna die or something." *Id.* The cashier was terrified and "kept saying 'I got a daughter. Please don't do this.'" *Id.* at 25. One of the employees told Jackson that the safe was locked and that there was a five-minute delay to open it. Jackson kept yelling and told the manager that "if the safe didn't open in a certain amount of time, he was gonna blow her head off." *Id.* at 26. The manager gave Jackson the bundle of fifty $1 bills, and the cashier gave him a $100 bill and a $50 bill from a lockbox. Jackson placed several packs of Newport 100 cigarettes and the cash in a Family Dollar bag and exited the store. The manager called the police and felt "[s]cared to death." *Id.* at 16.

[3] A man observed Jackson run out of the store with a plastic bag and around the corner, and the man waved down a police officer. Another man who was outside of his house observed two police vehicles drive at a high speed on a

nearby street with their lights and sirens activated and afterwards observed Jackson in black pants and a black hoodie in the bushes. The man saw Jackson walk down the street and behind another bush, and then the man waved down an officer and told them where he had last seen Jackson. As the man was walking back to his house and across his lawn, he again saw Jackson, who was no longer wearing the black clothing and was carrying a plastic bag, and Jackson asked the man to hide him. Jackson lifted up his shirt to show the gun. The man told Jackson that he would be in a lot of trouble for the gun and told him that he should throw it on the front porch. Jackson initially placed the gun on the porch and then immediately walked up the steps, picked up the gun again, tried to open the front door of the house but found it was locked, walked down the steps, and placed the gun into his plastic bag. At that point, the man pulled out his gun and demanded that Jackson lay down, and Jackson complied. The man yelled for officers, who came running and arrested Jackson. The officers retrieved the plastic bag on the porch near Jackson and found it contained four packs of unopened Newport cigarettes and "a black, it said Colt on the side, which . . . ended up being an Airsoft gun or BB gun" which was "a CO2 powered Airsoft gun . . . that's supposed to mimic a Colt firearm." *Id*. at 56, 64. The officers found money on Jackson which included a $100 bill, a $50 bill, fifty $1 bills, and three $20 bills. The officers also removed clothes from the bushes which included black work pants and two black shirts.

[4] On September 26, 2017, the State charged Jackson with robbery as a level 3 felony. In April 2018, the court held a bench trial. Jackson testified that he had

found the bag containing the cigarettes and gun on the ground, that he had earned the money working for a temporary service, and that he was just walking down the street and was in the wrong place at the wrong time. The court found him guilty of robbery as a level 3 felony.

On May 25, 2018, the court held a sentencing hearing. Jackson's counsel stated that one of Jackson's sisters had indicated that Jackson had been shot in the head approximately twenty years earlier and that the family was concerned that it had an impact on his cognitive abilities. Counsel also stated that he had met with Jackson multiple times and always found that Jackson understood the case and was able to talk about his defense. Jackson's counsel stated, "if I were to meet [Jackson] without any history, I'd probably think he had a learning disability, and perhaps that's related to the head wound, which is consistent with what his sister tells me," and "[i]f he's not gonna self-disclose that to them when he gets to R.D.C., it may be a good idea to have some record of that in the pre-sentence report, just so they can better help him." *Id*. at 98. Jackson's counsel stated that he believed there were some mental health issues and "I don't know how to exactly quantify those, but to the extent that those are mitigating, we'd ask the Court to give that some weight. He does have some health issues, has seizures and the like." *Id*. at 99. He also argued that not a lot of property was taken and nobody was harmed, and asked the court to impose no more than the advisory sentence of nine years. The State argued that Jackson had an extensive and extremely serious criminal history, has had his probation revoked and an opportunity to address any substance abuse issues,

committed the instant armed robbery not long after his discharge from parole in 2015, and in committing the robbery pointed a gun at the store clerks who were clearly extremely fearful. The State requested an aggravated sentence. The court found Jackson's criminal record "with failed efforts at rehabilitation covering a period of time from 1999 to 2017, with four prior felony convictions" to be an aggravating circumstance. *Id*. at 101. It stated that Jackson was a multi-state offender, had been given the benefit of probation a couple of times, time in the Department of Correction, and parole, and sentenced Jackson to twelve years.

## *Discussion*

[6] Jackson claims that his sentence is inappropriate in light of the nature of the offense and his character. He argues that he remained polite and composed even when the trial judge announced the guilty verdict, that he expressed a desire to further his education and continue working and contributing to society, that the fact he reported he plans to abstain from getting into trouble by working shows that he is a hard worker who values personal growth, and that his strong familial relationships show that he has some redeeming qualities. The State responds that nothing about the nature of Jackson's offense, which caused multiple people to fear for their lives and involved attempted residential entry after the fact, warrants downward revision of his sentence. The State also points to Jackson's criminal history and argues that he has consistently demonstrated over the last two decades that he will not respect the authority of the courts, the law, or the rights of others.

[7]     Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[8]     Ind. Code § 35-50-2-5 provides that a person who commits a level 3 felony shall be imprisoned for a fixed term of between three and sixteen years, with the advisory sentence being nine years. Jackson was sentenced to twelve years.

[9]     Our review of the nature of the offenses reveals that Jackson entered the Family Dollar store dressed in black and wearing a mask on his face, displayed an Airsoft gun which was designed to look like a Colt firearm and pointed it at the manager's head, and demanded money. He yelled and threatened the store employees, telling the manager that "if the safe didn't open . . . he was gonna blow her head off." Transcript Volume 2 at 26. He took money from the manager and money from the cashier which she obtained from a lockbox. The manager testified that the robbery occurred over ten or fifteen minutes. The manager testified she was "[s]cared, like [she] was gonna die" and "[s]cared to death," and the cashier testified that she was terrified and "kept saying 'I got a daughter. Please don't do this.'" *Id*. at 12, 16, 25. After leaving the store, Jackson removed his black pants and shirt, asked a man to hide him, lifted his shirt to display his gun, and attempted to enter the man's house.

[10]     Our review of the character of the offender reveals that, according to the presentence investigation report (the "PSI"), Jackson's criminal history consists of possession of a controlled substance as a felony in Missouri in May 1999, for which he was placed on probation which was revoked twice and he was ordered to serve five years in prison, and murder in the second degree, armed criminal action, and attempted robbery in the first degree as felonies in October 2001, for which he was sentenced to fifteen years in prison. The PSI indicates that he was released to parole in July 2014 and discharged from parole in October 2015. The PSI also states that, according to Jackson's NCIC report, it appears he was arrested in Missouri in 1999 for "Tampering With Motor Vehicle – Airplane" but that no further information was obtained. Appellant's Appendix Volume III at 6.

[11]     The PSI further provides that Jackson stated that he plans to abstain from further trouble by working and that he reported that, prior to his present incarceration, he worked at various temporary agencies. It also provides that Jackson stated that he suffered from chronic seizures. The PSI indicates that Jackson reported that he began using marijuana at age eighteen or nineteen and used daily until age thirty-six when he claimed to have quit. The PSI states that, when asked about his feeling toward the present verdict, Jackson stated "They did me wrong." *Id*. at 8. The PSI indicates that Jackson scored high in two domains of the Indiana risk assessment system tool, the criminal history domain and the criminal attitudes and behavioral patterns domain, and that his

overall risk assessment score places him in the moderate risk to reoffend category.

[12] After due consideration, we conclude that Jackson has not sustained his burden of establishing that his sentence is inappropriate in light of the nature of the offenses and his character.[1]

[13] For the foregoing reasons, we affirm Jackson's sentence.

Affirmed.

Altice, J., and Tavitas, J., concur.

---

[1] To the extent Jackson argues the court abused its discretion in sentencing him by failing to consider his family support, desire to stay out of trouble, and mental health, we need not address this issue because we find that his sentence is not inappropriate. *See Chappell v. State*, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012) (noting that any error in failing to consider the defendant's guilty plea as a mitigating factor is harmless if the sentence is not inappropriate) (citing *Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007) (holding that, in the absence of a proper sentencing order, Indiana appellate courts may either remand for resentencing or exercise their authority to review the sentence pursuant to Ind. Appellate Rule 7(B) ), *reh'g denied*; *Mendoza v. State*, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) (noting that, "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate"), *trans. denied*), *trans. denied*; *Shelby v. State*, 986 N.E.2d 345, 370 (Ind.Ct.App.2013) (holding that "even if the trial court did abuse its discretion by failing to consider the alleged mitigating factor of residual doubt, this does not require remand for resentencing" and citing *Windhorst* and *Mendoza*), *trans. denied*. Even if we were to consider Jackson's abuse of discretion argument, we would not find it to be persuasive. Jackson did not argue at sentencing that his family support and desire to stay out of trouble constituted mitigating circumstances, and while Jackson's counsel stated that Jackson may have a learning disability which was possibly related to his previous head wound, the trial court did not find that Jackson's mental health issues constituted a mitigating circumstance.