## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 28 2020, 7:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Clark County Public Defender's Office
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marial Mabut Wel,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

January 28, 2020

Court of Appeals Case No.
19A-CR-1950

Appeal from the Clark Circuit Court

The Honorable Vicki L. Carmichael, Judge

Trial Court Cause No.
10C04-1801-MR-1

**Brown, Judge.**

[1] Marial Mabut Wel appeals his advisory sentence for murder. We affirm.

## Facts and Procedural History

[2] Wel was born in 1981, moved to Louisville, Kentucky, in 2001, and married Josephine Amon in 2004. Wel and Amon had four children together, and they separated in approximately October 2017. Sometime between 1:30 a.m. and 3:45 a.m. on January 21, 2018, Wel went to the residence at which Amon was living in Jeffersonville, argued with her, drew a gun, shot her, moved toward her body which had fallen on the floor, and shot her a second time. Amon suffered gunshot wounds to her shoulder and head. Wel's thirteen-year-old daughter was at the apartment and watched Wel kill Amon. Wel ordered his daughter to retrieve her mother's keys and then to leave with him. They walked to another location in the apartment complex where Wel had parked his vehicle, which was away from Amon's apartment, and Wel drove them to Louisville. Wel's daughter called her mother's family, and Wel took the phone from her and threatened to kill them. Wel stopped at the Jefferson County Hall of Justice, placed his gun and ammunition in a trash can and cigarette receptacle, stayed until police arrived, and told police that he had killed his wife and where the murder weapon was located.

[3] On January 22, 2018, the State charged Wel with murder and filed a notice of intent to seek an enhanced penalty for use of a firearm. Wel and the State entered into a plea agreement pursuant to which Wel agreed to plead guilty to murder and the State agreed to dismiss the firearm enhancement. The plea agreement provided that the executed portion of Wel's sentence would be

capped at fifty-five years. At the guilty plea hearing, Wel admitted the allegations in the probable cause affidavit were true and support the charge against him and pled guilty to murder pursuant to the plea agreement.

[4] At sentencing, a social worker who provided mental health services for Clark County Jail testified that she met with Wel and completed a mental health evaluation. The written evaluation indicated that Wel stated that he is from Sudan, that he had witnessed mass murders including watching family members die, that he was five years old when his father died, that when he was six years old his village was attacked and he believed no one in his immediate family survived, and that he lived in a refugee camp with thousands of people for nine years. According to the evaluation, Wel stated that he began hearing voices and seeing the image of someone who wanted to cause him harm years ago, the voices and image would tell him to harm others or himself, that he had no memory of what happened the night his wife died, and that he thinks she is still alive. The evaluation stated that Wel reported that he had been seen by multiple doctors over the years, the doctors did not find anything wrong and he was prescribed Ibuprofen, he was not referred to a mental health provider or a psychiatrist while he was being treated at his primary care doctor or the emergency room, and a spiritual healer came to his house "to cleanse his family and house of 'this thing' that has [sic] living in his body." Appellant's Appendix Volume II at 35. On cross-examination, the social worker indicated the information in her evaluation was self-reported and she was not able to corroborate Wel's claims. One of Wel's children testified that, ever since his

father killed his mother, every day he goes to Amon's gravesite, sits there, and cries. The daughter of Wel who observed the shooting testified that she saw everything that happened, that the fact Wel killed her mother right in front of her when he knew she was there was horrible, and that it made her feel like he never cared about her because he placed her in that position. She testified that she was very close to her mother and that Wel killed her mother out of hatred. Amon's father testified that Amon's daughter called him and told him that Wel had killed Amon, that Wel grabbed the phone from her and said "I want to find you" and "I want to kill you" and that he was planning to kill more people in the family. Transcript Volume II at 30. He also testified that Wel previously threatened to shoot a roommate due to a disagreement about money.

[5] The prosecutor argued that Wel shot Amon in front of their thirteen-year-old daughter, that after she fell to the ground he kicked her body to see if she was dead and then shot her in the head, and that the killing was a cold-blooded execution. Wel's defense counsel argued that the mental health evaluation described a traumatic childhood and that he has dealt with some undiagnosed psychiatric issues and that these issues possibly led Wel to the incident that took a life. He argued that a trial would have been significantly worse for the family. He asked that, in light of Wel's mental health, minimal criminal history, work history, cooperation with police as soon as the crime happened, and guilty plea, the court sentence Wel to forty-five years or to the advisory with a suspended term as the court deemed appropriate. Wel stated that there was the violence of war when he was young in Sudan, that he had seen his father and others killed

in front of him, that he has wanted to kill himself, that he did not know what he had done until he was driving and his daughter told him that he had shot her mother, that he had gone there to pick up the children's clothes because he went to church with them every Sunday, and "I don't even know why, how this happened here, because of my, it's my, of my history since I was young." *Id.* at 36-37. The court found Wel's prior criminal history and that he committed the crime of violence in front of a child less than eighteen years of age to be aggravating circumstances, that Wel's work history was a mitigating circumstance, and that the aggravating circumstances outweighed the mitigating circumstance. The trial court sentenced Wel to fifty-five years.

### *Discussion*

[6]     The issue is whether Wel's sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[7]     Wel argues that his sentence is inappropriate and that ten years of his sentence should have been suspended. He argues that the circumstances of his offense were akin to voluntary manslaughter. He also argues that he saw his father killed when he was five years old, that he lived with thousands of other refugees, and that the traumatic experiences caused him psychiatric issues. The

State responds that Wel's use of a handgun to murder the mother of his children in front of his thirteen-year-old daughter justified his advisory sentence. It also argues that Wel has a history of violence, that his mental health and difficult childhood do not warrant a lesser sentence, and that Amon had nothing to do with Wel's experiences thirty years earlier.

[8]     Our review of the nature of the offense reveals that Wel drove to Amon's apartment in the early morning, parked his vehicle away from the building, brought a gun inside, argued with her, shot her in the shoulder and in the head in front of his thirteen-year-old daughter, told his daughter to take Amon's keys and leave with him, and while driving with his daughter in the vehicle threatened to kill Amon's family. Our review of Wel's character reveals that he pled guilty to murder and that in exchange the State agreed to a maximum executed sentence of fifty-five years and to dismiss the firearm enhancement. According to the presentence investigation report ("PSI"), Wel was arrested for domestic battery in 2006 for which he was later sentenced to ninety days and "Assault 4th Degree Domestic Violence Minor Injury" in 2007 for which he received "120 days jail, 78 days suspended, conditional discharge 2 years." Appellant's Appendix Volume II at 79. It also indicates he was arrested for "Domestic Battery-Bodily Harm" in June 2010 and the disposition was unknown. *Id*. The PSI, under mental health, states that Wel reported he was not sure what he is diagnosed with, he often hears voices, he has suffered from this since he was in Sudan, and he is currently prescribed Depakote and a medication to help him sleep. The PSI also indicates that Wel owned a home

and vehicle, had student loan debt, and was employed full-time as a welder for the same employer for ten years prior to his arrest. The trial court was able to consider the mental health evaluation prepared by the social worker and her testimony as well as Wel's statement regarding his health and childhood. After due consideration, we conclude that Wel has not sustained his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.[1]

For the foregoing reasons, we affirm Wel's advisory sentence for murder.

Affirmed.

Baker, J., and Riley, J., concur.

---

[1] To the extent Wel argues that the court abused its discretion in sentencing him, we need not address this issue because we find that his sentence is not inappropriate. *See Chappell v. State*, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012) (noting that any error in failing to consider the defendant's guilty plea as a mitigating factor is harmless if the sentence is not inappropriate) (citing *Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007) (holding that, in the absence of a proper sentencing order, Indiana appellate courts may either remand for resentencing or exercise their authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), *reh'g denied*; *Mendoza v. State*, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) (noting that, "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate"), *trans. denied*), *trans. denied*. Even if we were to address Wel's abuse of discretion argument, we would not find it persuasive. Wel raised his difficult childhood and mental health issues at sentencing, he received a benefit by pleading guilty pursuant to the plea agreement, and his criminal history was not so remote or unrelated to the instant offense such that consideration of it as an aggravator constituted an abuse of discretion.