## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 19 2016, 8:26 am

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| APPELLANT *PRO SE* | ATTORNEYS FOR APPELLEE |
| Shamir Chappell<br>Carlisle, Indiana | Gregory F. Zoeller<br>Attorney General<br><br>Jesse R. Drum<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shamir Chappell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 19, 2016<br><br>Court of Appeals Case No.<br>89A01-1503-PC-124<br><br>Appeal from the Wayne Superior Court<br><br>The Honorable Gregory A. Horn, Judge<br><br>Trial Court Cause No.<br>89D02-1208-PC-8 |

**Bradford, Judge.**

## Case Summary

In 2014, Appellant-Defendant Shamir Chappell filed a petition for post-conviction relief ("PCR") relating to his 2011 convictions for Class A felony aiding and abetting burglary resulting in bodily injury and Class C felony aiding and abetting battery with a deadly weapon. In his petition, Chappell claimed that he received ineffective assistance of trial and appellate counsel. The post-conviction court denied Chappell's petition and Chappell now appeals *pro se*. We affirm.

## Facts and Procedural History

We outlined the following underlying facts and procedural history of this case in Chappell's direct appeal:

> In 2010, Elly Casebolt–Flanagan ("Casebolt–Flanagan") rented a home in Richmond, Indiana to Dinashia Bee ("Bee"). Bee and Casebolt–Flanagan had an "understanding" that only Bee was to live at the home. Despite this, Bee lived at the home with her mother and two brothers. One of Bee's brothers, Maurice Jones ("Maurice") lived at the home with his wife, Heather Jones ("Heather"). Casebolt–Flanagan was unhappy with this and legally evicted Bee from the home on September 8, 2010. As a result of the eviction, Bee was given until September 13, 2010 to vacate the house and take her belongings. Although Bee and her mother moved out of state, Maurice and Heather stayed at the house on September 12, 2010 in order to remove the remainder of Bee's belongings.
>
> That evening, Maurice went to the home of Carlotta Wilkerson ("Wilkerson"), with whom he had a relationship. Wilkerson began to send Heather text messages, taunting her that Maurice was going to leave her to be with Wilkerson. Wilkerson even called Heather and threatened to physically assault her.

Undaunted by these threats, Heather went to Wilkerson's home to confront her. The two women argued, but Maurice was able to keep them physically separated. Maurice then went back to the rented home with Heather, and the two slept in the back bedroom of the house.

At some point in the middle of that night, Maurice and Heather heard someone banging on the front door. Heather got out of the bedroom to see what was causing the noise when she saw the door fly open and Wilkerson and Chappell enter the house. Heather then ran back to the bedroom and shut the door. Wilkerson and Chappell tried to force their way into the bedroom, but Maurice and Heather held the door shut. Chappell then kicked the door repeatedly, eventually breaking it off the latch and hinges. Wilkerson was holding a steak knife, so Heather attempted to flee out the front door but was blocked by an unknown individual. Heather then ran to the basement in an attempt to flee out a back door, but Wilkerson followed her.

In the basement, Wilkerson stabbed Heather in the arm. Maurice and Chappell soon came to the basement, and Chappell blocked Heather's attempt to run back up the basement stairs. When Maurice attempted to come to Heather's defense, Wilkerson told Chappell, "we're in this together, do it," and "what are you waiting for?" Tr. pp. 302, 245. Chappell then swung his fists at Maurice. Heather managed to escape back up the basement stairs, but as she did, Wilkerson stabbed her again, this time in the hip. Heather was then able to run out the front door and found shelter at a neighbor's house, where the neighbor called the police. Maurice too ran to the front door. As he did, Chappell ran by him, telling Wilkerson, "come on, we gotta go." Tr. p. 319. Wilkerson and Chappell left the house, and Wilkerson slashed the tires on Maurice's car. Maurice went back into the house and also called the police.

When the police arrived, the found they [sic] front door of the house dented and completely removed from the door frame. Heather was taken to the hospital, and it took eight medical

staples to close her knife wounds. Both Maurice and Heather later identified Wilkerson and Chappell from a photographic array as their attackers. Both were "100%" positive of the accuracy of their identifications. Tr. pp. 182-83, 255.

On December 7, 2010, the State charged Chappell as follows: Count I, aiding, inducing, or causing Class A felony burglary resulting in bodily injury; Count II, aiding, inducing, or causing Class B felony burglary of a dwelling; and Count III, Class B misdemeanor battery. The State also alleged that Chappell was an habitual offender. The State later moved to add Count IV, Class C felony battery, and moved later again to amend this charge to aiding, inducing, or causing Class C felony battery. At that time, the State also added Count V, which alleged Class D felony residential entry. A two-day jury trial commenced on February 7, 2011. At the conclusion of the trial, the jury found Chappell guilty on Counts I, II, IV, and V, but acquitted him on Count III. Chappell then admitted to being an habitual offender.

On March 4, 2011, the trial court sentenced Chappell to forty years on Count I, ten years on Count II, and four years on Count IV. The trial court vacated the conviction on Count V on double jeopardy grounds. The court also attached an habitual offender enhancement of thirty years to the forty-year sentence on Count I, and ordered the sentences on the other counts to run concurrently with Count I. Thus, Chappell was sentenced to an aggregate of seventy years incarceration.

*Chappell v. State*, 966 N.E.2d 124, 127-28 (Ind. Ct. App. 2012).

[3]     The trial court subsequently denied Chappell's motion to correct error and Chappell appealed. *Id.* On appeal, this court affirmed Chappell's convictions for Class A felony burglary and Class C felony battery and vacated his conviction for Class B felony burglary on double jeopardy grounds.

Additionally, we found that Chappell's seventy-year sentence was not inappropriate.

[4] On January 28, 2014, Chappell filed an amended PCR petition, arguing in part that his trial and appellate counsel were ineffective. Chappell argued that his trial counsel was ineffective for "fail[ing] to properly conduct an investigation and have court documents regarding the eviction filed by Casebolt-Flanagan against Bee," and for "fail[ing] to object to Maurice's testimony that Bee gave him permission to be in the house." PCR Appendix p. 24. Chappell also argues that his appellate counsel was ineffective for failing to raise the issue of double jeopardy. After two hearings, the post-conviction court rejected Chappell's argument and denied his petition.

# Discussion and Decision

[5] Chappell appeals the denial of his PCR petition.

> In post-conviction proceedings, the petitioner bears the burden of proof by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010).

*Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011).

[6] Chappell claims that he received ineffective assistance of trial and appellate counsel.

> When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. Second, the defendant must show that the deficient performance resulted in prejudice. To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* (quoting *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009)).

# I. Ineffective Assistance of Trial Counsel

[7] Chappell claims that his trial counsel was ineffective for failing to properly investigate Bee's eviction and for failing to object to hearsay testimony.

## 1. Failure to Investigate

[8] Chappell argues that there was not a residential burglary because, at the time of the crime, Bee had been evicted. He contends that his trial counsel was

ineffective for failing to interview Bee[1] to establish the date of eviction and failing to obtain the court ordered eviction notice which would have shown that Bee "no longer had any possessory interest in the relevant property" at the time of the crime. Appellant's Br. p. 12.

[9] Chappell's argument appears to be that because Bee had been evicted at the time of the crime, the home which he helped to break into was not a dwelling or residence. However, Chappell was convicted of Class A felony burglary under Indiana Code section 35-43-2-1(2) (2004) which does not require that the building broken into be a dwelling or residence:

> A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is:
> (1) a Class B felony if:
> (A) it is committed while armed with a deadly weapon; or
> (B) the building or structure is a:
> (i) dwelling; or
> (ii) structure used for religious worship; and
> (2) a Class A felony if it results in:
> (A) bodily injury; or
> (B) serious bodily injury;
> to any person other than a defendant.

---

[1] "At the post-conviction relief evidentiary hearing, both Detective Michael French, a State's witness, and Attorney Gottlieb [Chappell's trial counsel] testified that they tried to contact Bee prior to trial but were unable to reach her." PCR Appendix p. 24.

Therefore, whether Bee was evicted from the property prior to the commission of the crime is not relevant to the conviction for Class A felony burglary. The fact that the building was owned by Casebolt-Flanagan and that Chappell was not authorized to enter was sufficient to establish the elements of the crime. Accordingly, Chappell's trial counsel was not ineffective for failing to investigate Bee's whereabouts or obtain the eviction notice.

## 2. Failure to Object

[10] "To prove that ineffective representation resulted from the failure to object to hearsay statements, a defendant must prove that an objection would have been sustained, that the failure to object was unreasonable, and that he was prejudiced." *Potter v. State*, 684 N.E.2d 1127, 1134 (Ind. 1997) (citing *Thompson v. State*, 671 N.E.2d 1165, 1170 (Ind. 1996)).

[11] Chappell also argues that his trial counsel was ineffective for failing to object to Maurice's testimony that Bee had given him permission to be in the residence she no longer legally had authority over and that this statement was hearsay. Chappell contends that had his trial counsel objected, it would have prevented the victims from showing that they had a right to be in the home. Again, this line of logic appears to be aimed at establishing that the house was not a dwelling because the victims did not have a right to be there.

[12] Chappell's argument fails for several reasons. First, Chappell does not cite to any specific hearsay statement in the record. Rather, Maurice only indicated that he and his wife had permission to be inside the home and refers to no out-

of-court statement. Furthermore, as we have determined above, whether or not the house was a dwelling is not relevant to prove the elements of the crime. Accordingly, Chappell has failed to show that any objection would have been sustained or, even assuming a hearsay statement was made, that he was prejudiced by it.

## II. Ineffective Assistance of Appellate Counsel

[13] Chappell argues that his appellate counsel was ineffective for failing to argue on direct appeal that his Class A felony burglary and Class C felony battery convictions violated double jeopardy. "In a claim that appellate counsel provided ineffective assistance regarding the selection and presentation of issues, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential." *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-61 (Ind. 2000) (citations omitted). "A defendant may establish that his appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision." *Id*. Additionally, a defendant must show that the unraised issues are "clearly stronger than those presented." *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

[14] "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential

elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Chappell claims that his convictions fail the actual evidence test. To establish that his convictions constitute the same offense under this test, Chappell "must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

[15] To convict Chappell as an accomplice to Class A felony burglary resulting in bodily injury, the State was required to prove that he (1) knowingly or intentionally, (2) aided or induced Wilkerson, (3) to break and enter, (4) the building or structure of another person, (5) with the intent to commit a felony therein, and (6) it resulted in bodily injury to another person. Ind. Code §§ 35-43-2-1; 35-41-2-4. To convict Chappell as an accomplice to Class C felony battery with a deadly weapon, the State was required to prove that he (1) knowingly or intentionally, (2) aided or induced Wilkerson, (3) to touch another person in a rude, insolent, or angry manner, (4) with a deadly weapon. Ind. Code §§ 35-41-2-4; 35-42-2-1 (2009).

[16] We disagree with Chappell's contention that there is a reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both offenses. The fact that Chappell and Wilkerson broke down the front door, entered the house with the intent to attack Heather, and that Heather was injured as a result is sufficient to establish the elements of aiding and abetting burglary.

[17] After the burglary was complete and while the victims were hiding in the bedroom, Chappell "kicked the [bedroom] door repeatedly, eventually breaking it off the latch and hinges." *Chappell*, 966 N.E.2d at 127. After Heather ran to the basement and was stabbed by Wilkerson, Chappell "blocked Heather's attempt to run back up the basement stairs" and proceeded to attack Maurice as he attempted to defend Heather before Wilkerson again stabbed Heather. *Id.* This evidence is sufficient to establish Chappell's aiding and abetting Wilkerson's battery of Heather. Accordingly, we find that Chappell has failed to meet his burden to show that his trial or appellate counsel was ineffective.

[18] The judgment of the post-conviction court is affirmed.

Baker, J., and Pyle, J., concur.